UNITED STATES of America

v.

Fred C. BARKSDALE.

No. 80–52–Cr–T–GC.

United States District Court,
M. D. Florida,
Tampa Division.

Oct. 10, 1980.

Judy Rice, Steve Cowen, Asst. U. S. Attys., Tampa, Fla., for plaintiff.

Raymond LaPorte, Tampa, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE C. CARR, District Judge.

Before the Court for consideration are the Defendant's Motions to Dismiss, for Mistrial and to Suppress. All of the Motions are based upon the alleged misuse of certain summonses and a circular letter by the Internal Revenue Service in the course of its investigation from May, 1977, to November 1979, into the tax affairs of the Defendant. Argument on the Motions was heard on September 17, 22 and 25, 1980. After consideration of the evidence adduced at the hearing, the argument of counsel and the applicable law, the Court makes the following findings of fact and conclusions of law in compliance with Rule 12(e), F.R. Cr.P.

### I.

The Defendant, Fred C. Barksdale, is an attorney who was engaged in the practice of law at all dates relevant to the Motions

before the Court. Counts one and two of the indictment charge him with violating 26 U.S.C. § 7206(1) by understating on his tax returns his gross income from his law practice and his interest income for the tax years 1975 and 1976. In Counts three through six the Defendant is charged with endeavoring to obstruct the communication of information relating to the charges in the first two counts in violation of 18 U.S.C. § 1510.

The IRS began its investigation into Defendant's income tax returns for 1975 and 1976 on May 7, 1977.[1] On January 24, 1978, special agents of the IRS's Criminal Investigation Division (CID) made their first contact with the Defendant. Shortly thereafter on January 27, 1978, Special CID Agent A. Parker Willis issued a summons to a records custodian at the Hillsborough County Courthouse to obtain county records "reflecting receipt of fines paid on a Time Payment basis."[2] Information pertaining to the Defendant's bank accounts and financial records was sought and obtained by the service of summonses on the Exchange Bank of Temple Terrace[3] and the Peoples Bank of Hillsborough County[4] on March 31, 1978; on the Exchange National Bank of Tampa,[5] the Flagship Bank of Tampa,[6] and the Barnett Bank of Tampa[7] on April 3, 1978; and on various other individuals in the period from May, 1978 to March, 1979.[8]

Following a request by the CID, Revenue Agent Allan Andreasen was assigned to the case to assist the special agents and to investigate the Defendant's possible civil tax liability on May 10, 1979. On August 11, 1978, the Chief of the CID requested that circular letters[9] be printed and mailed to persons identified as possible clients of the Defendant for the tax years in question. The letters were mailed during October, 1978.

Finally on July 3, 1979, and July 31, 1979, Revenue Agent Andreasen and Special Agents Waldon and Willis submitted their respective reports. On November 16, 1979, the IRS recommended to the Department of Justice that the Defendant be criminally prosecuted.

## II.

A.  The Summonses:

Relying primarily on *United States v. Dahlstrum,* 493 F.Supp. 966 (C.D.Cal.1980), the Defendant contends that the issuance of the summonses referred to above was an unlawful abuse of the IRS's summons power under 26 U.S.C. § 7602. The Defendant argues that the summonses were used solely to aid a criminal prosecution and not for any civil purpose, as evidenced by a variety of facts, the most significant of which are as follows: (1) No revenue agent had been assigned to Defendant's case to investigate possible civil tax liability until after the summonses were served on the financial institutions and Hillsborough County, and even after assignment the revenue agent's participation was minimal; (2) the Defendant was given his "rights" pursuant to the Internal Revenue Manual on August 31, 1978; and (3) in four letters written in January and March, 1979 from CID Group Manager Charles A. Bandel requesting permission to monitor certain phone calls to which the Defendant was a party, Mr. Ban-

---

1.  The initial step in a tax investigation, according to Special Agent Craig Waldon, is the filing of an "information item."

2.  Defendant's Exhibit A

3.  Defendant's Exhibit C

4.  Defendant's Exhibit D

5.  Defendant's Exhibit E

6.  Defendant's Exhibit F

7.  Defendant's Composite Exhibit H

8.  Defendant's Composite Exhibit H, Defendant's Exhibit G

9.  A sample letter is attached to Defendant's Motions as Exhibit A. The letters sought the following information:

> Year ticket(s) received  _____
> Amount of Barksdale's fee(s)  _____
> Date(s) of payment(s)  _____
> How paid — cash or check  _____
> Your phone number  _____

del concluded with the statement that "[a] conviction of this individual for income tax evasion would greatly enhance the district's enforcement efforts." [10]

■ It is well–settled that for an IRS summons issued under 26 U.S.C. § 7602 [11] to be enforceable, it (1) must be issued before the Service recommends criminal prosecution to the Department of Justice and (2) it must be used in a good faith pursuit of congressionally authorized purposes. *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed. 221 (1978); *United States v. Genser*, 602 F.2d 69 (3rd Cir. 1979). The Supreme Court has held that for an IRS summons to be utilized in good faith, it must be shown that the investigation is being conducted pursuant to a legitimate purpose, that the information sought may be relevant to that purpose, that the information is not already in the service's possession and that statutorily required administrative procedures have been followed. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). An IRS summons does not meet the *Powell* criteria when at the time the summons is issued, the Service has abandoned as an institution the pursuit of civil tax determination or collection and its investigation is solely criminal. *LaSalle, supra* 437 U.S. at 317, 98 S.Ct. at 2368. Since none of the summonses challenged here were issued after prosecution was recom-

mended, the only issue before the Court for consideration is whether, as the Defendant urges, the summonses were used in bad faith to investigate the Defendant's criminal tax liability following an institutional abandonment of any civil investigation.

■ Where the Internal Revenue Service has not yet recommended prosecution to the Justice Department, the Defendant bears a very heavy burden in illustrating abandonment of a civil purpose since tax fraud investigations have "normally inseparable" dual civil and criminal goals. *LaSalle, supra* 437 U.S. at 314, 98 S.Ct. at 2366; *Genser, supra* at 151. Here the Defendant has failed to carry that burden. This is not a case involving recognized indicia of abandonment of civil purpose such as the guiding or influencing of the IRS investigation by the Justice Department prior to the recommendation for prosecution [12] or an inordinate delay of the investigation without explanation to facilitate criminal evidence gathering.[13] That the IRS did not assign a revenue agent to investigate the possible civil tax liability of the Defendant until May 10, 1978, does not indicate an institutional abandonment of civil purposes, given the dual civil/criminal function of special agents generally and the character of the investigation in this specific case. *See LaSalle, supra* 437 U.S. at 311, 98 S.Ct. at 2365; *United States v. Garden State National Bank*, 607 F.2d 61, 65 n.3 (3rd Cir.

10. Defendant's Exhibit M.

11. 26 U.S.C. § 7602 provides:
For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
    (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem

proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
    (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

12. According to the unrefuted testimony of Special Agent Waldon, except for a preliminary departmental information request to the F.B.I. in October, 1977, there was no communication between the IRS and the Justice Department until after the recommendation to prosecute had been made.

13. *LaSalle, supra* 437 U.S. at 307, 98 S.Ct. at 2362, *Genser, supra* at 72.

1979); *United States v. Moll*, 602 F.2d 134, 138–139 (7th Cir. 1979); *United States v. McCarthy*, 514 F.2d 368, 374 (3rd Cir. 1975). The fact that the Defendant was cautioned of his rights in August, 1978, and the 1979 statements by Group Manager Bandel are of similar inconsequence: The former merely indicates a following of IRS regulations and neither precludes nor suggests cessation of civil information gathering. The latter is nothing more than an opinion statement by a single middle level agency official made at a time when, according to the unrefuted direct testimony of CID Chief Walker C. Jones, Mr. Bandel's superior, it had not yet been determined that criminal prosecution was warranted. Given the "multilayered and thorough" review of the conclusions of individuals within the agency, *LaSalle, supra* 437 U.S. at 314–315, 98 S.Ct. at 2366–2367, Mr. Bandel's statements are at most illustrative of his own special interest in the criminal phase of the investigation, an understandable interest given the fact that he was assigned to the CID. *See Moll, supra* at 139.

■ In conclusion, when the evidence as to each summons challenged is viewed in its entirety, *see Genser, supra* at 150, there is nothing to indicate an institutional abandonment of the pursuit of potential civil liabilities at any time prior to November 16, 1979, so that the summonses were not issued in bad faith under the standards of *Powell* and *LaSalle*.[14]

B. The Circular Letter:

During the month of October, 1978, approximately two thousand letters were mailed by the IRS to persons identified as possible clients of · the Defendant during 1975 and 1976. The letters contained the following statement:

The above information is required under the Authority of Section 7602, Internal Revenue Code. A response is required, even if negative.

The Defendant contends that since the IRS has no inherent power to require the production of documents apart from its civil summons power under § 7602(2), inclusion of the above language in the circular letters was an abuse of the agency's investigative authority.[15]

Under 26 U.S.C. § 7602(1), separate and apart from its summons power under Subsection 2, the IRS is authorized "to examine any books, papers, records or other data which may be relevant or material" to determining the tax liability of any person. Additionally, the IRS Handbook for Special Agents, § 347, authorizes the use of circular form letters where, as here, mail circularization is "the most practical means of obtaining documentary evidence when a large number of persons, widely scattered geographically, need to be reached."

■ The mere fact that the IRS has the power under § 7602(2) to obtain information by issuing summonses does not require it to do so, and the Court finds that given the broad investigative authority of the IRS under § 7602(1), both the use and the wording of the circular letters in this case were reasonable under the circumstances.[16]

14. The Court is unpersuaded by the Defendant's argument under *Dahlstrum, supra*, that the delay in appointing a revenue agent and the nature of the agent's participation in the investigation requires a finding that the summonses were issued for solely criminal purposes.

15. While it is less than clear from the written Motions and his reliance on IRS summons enforcement cases, counsel for Defendant stated that he does not urge the proposition that the letters should be viewed as functionally equivalent to § 7602(2) civil summonses. The strictures of *Powell* and *LaSalle, supra*, are therefore inapplicable to this issue.

16. The nature of the Defendant's law practice during the tax years in question complicated the IRS's investigation and necessitated the use of the circular letters. According to the evidence, including the Defendant's own testimony, during 1975 and 1976 the Defendant conducted a very high volume practice in which he specialized in criminal traffic cases, especially cases involving charges of driving while intoxicated. The evidence indicates that a great many of the Defendant's clients during 1975 and 1976 were transients, and were therefore difficult to contact. Indeed, fewer than a hundred responses were received to the over two

The Court finds additionally that even if the wording of the letters did in fact constitute an unlawful compulsion upon its recipients to provide information to the IRS,[17] the Defendant lacks standing to object. By the Defendant's own analysis, this is not a summons enforcement proceeding in which a taxpayer can intervene under certain circumstances to challenge the validity of summonses issued to third parties. *See Genser, supra.* Thus, the Defendant had no protectable Fourth or Fifth Amendment Constitutional interest in any of the information obtained from third parties by means of the circular letters, and therefore cannot object to the manner in which it was collected. *See United States v. Payner,* —— U.S. ——, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

For the foregoing reasons, it is accordingly Ordered that the Defendant's Motions to Dismiss, for Mistrial, and to Suppress are DENIED to the extent discussed above and not previously ruled upon by the Court.

thousand circular letters mailed, and of the over three hundred client witnesses who testified at trial, only a small fraction were contacted initially by the circular letters.

17. It should be noted that the mere failure of the IRS to abide by its own regulations, where the regulations are not mandated by either the Constitution or federal law, does not *a fortiori* render its actions unlawful or automatically require the suppression of evidence obtained. *See United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. Nuth,* 605 F.2d 229 (6th Cir. 1979).