**Emory W. SPECK; Mary F. Speck; Speck Cab Co., Inc., dba Veteran's Taxicab Co., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 93–10609.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1995.

Decided June 26, 1995.

Martin S. Schainbaum, San Francisco, CA, for plaintiffs-appellants.

Gary R. Allen and Kevin M. Brown, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before GOODWIN, POOLE, and KLEINFELD, Circuit Judges.

GOODWIN, Circuit Judge:

Pursuant to an investigation into possible tax evasion by taxpayers Mary F. Speck and her son Emory W. Speck, the Internal Revenue Service (IRS) contacted present and former employees of the Specks through the use of circular letters. The Specks filed in the district court a motion styled as a motion to quash summonses. The district court denied their motion. The Specks appeal, and we affirm.

## BACKGROUND

The Specks operate a taxicab business and keep their own business records. In 1992, the IRS received information that the Specks were receiving so called "back-book" income without reporting it as business income on the company records. In the taxicab busi-

ness, "back-book" income is money paid by taxicab drivers to their employer when the drivers fail to work a regularly scheduled shift.

On January 7, 1993, the IRS executed a warrant to seize records of "back-book" income from the Specks. The seized records covered only a four-week period and were, the IRS believed, incomplete. To reconstruct the income resulting from all "back-book" payments, Special Agent Lessler, the IRS Agent assigned to the investigation, drafted a letter that he sent to all present and past drivers for whom he could obtain mailing addresses.

In drafting the circular letter, Agent Lessler complied with Section 347.2 of the Internal Revenue Manual Handbook for Special Agents, which counsels that no circular letter should disclose that a particular taxpayer is under criminal investigation, and directs that the letter be signed "Special Agent, Internal Revenue Service." The circular letters read:

Dear _____,

The Internal Revenue Service is conducting an investigation of SPECK CAB CO., INC. dba VETERANS TAXICAB COMPANY, 1501 Harrison Street, San Francisco, California, and its officers EMORY W. SPECK and MARY F. SPECK. As a current or former taxicab driver for this company, you may have been charged a fee for not working a regularly scheduled shift. This fee is referred to as a "back book" payment in the industry.

In an effort to determine the amount of "back book" payments made to VETERANS TAXICAB COMPANY during the years 1988 through 1992, I would appreciate your response to the questions attached to this letter. Please be as specific as possible in you [sic] answers.

Please return this questionnaire in the enclosed preaddressed envelope. You may also contact me by telephone at 415/556-4879.

Thank you for your cooperation in this matter.

Mark D. Lessler

Special Agent
Internal Revenue Service

Agent Lessler received responses to some, but not all, of these letters.

█ The Specks learned of these letters and moved the district court to "quash" the letters on the ground that the letters either were statutorily unauthorized, or were de facto summonses issued to "third-party recordkeepers." *See* 26 U.S.C. § 7609(a)(1), (b)(2). The district court denied the motion. The district court's ruling rested on its interpretation of the relevant provisions of Title 26, rather than on any factual determination. We review such a decision *de novo. Ponsford v. United States,* 771 F.2d 1305, 1307 (9th Cir.1985).

## DISCUSSION

### I.

█ At the outset, the Specks challenge the authority of the IRS to conduct this investigation through the use of circular letters. They argue that inquiries of their taxicab drivers may be made only by way of formal summonses issued pursuant to 26 U.S.C. § 7602(a)(2), or through exercise of the subpoena power of a grand jury. Both the statutory summons procedure and grand jury proceedings, they note, carry certain safeguards that do not attend the mailing of circular letters. Through its use of circular letters, they argue, the IRS has made an end-run around those safeguards.

26 U.S.C. § 7602 ("Examination of books and witnesses") provides in pertinent part:

(a) **Authority to summon, etc.**—For the purpose of ascertaining the correctness of any return . . ., determining the liability of any person for any internal revenue tax . . ., or collecting any such liability, the Secretary is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the

Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

The Specks construe Section 7602 as authorizing IRS investigations only through the use of summonses. In the district court's view, because subsection (a)(2) authorizes the IRS to use summonses to compel persons to "produce such books, papers, records, or other data," the Specks' construction of Section 7602 fails to give independent meaning to subsection (a)(1), which broadly states that the IRS is authorized "to examine any books, papers, records, or other data." 26 U.S.C. § 7602(a)(1).

The Specks argue that subsection (a)(2) could be interpreted as establishing *how* the IRS may obtain "books, papers, records, or other data"—it may issue a summons—and subsection (a)(1) could be interpreted as establishing *what* the IRS may do once it has obtained them—it may examine them (so long as they are relevant or material to the investigation.) They then argue that because only subsection (a)(2) describes *how* the IRS may obtain information, no other means of obtaining information is available to the IRS. We are not persuaded. Nothing in the legislative history or in the text of Section 7602 suggests that subsection (a)(2) should be read to exclude informal or noncoercive attempts to obtain information about possible failures to report income.

The IRS' interpretation of Section 7602 is consistent with the tax collection scheme as a whole. Congress has granted the IRS "expansive information-gathering authority." *United States v. Arthur Young & Co.,* 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984). The IRS is obligated to "inquire after and concerning all persons ...

who may be liable to pay any internal revenue tax...." 26 U.S.C. § 7601.

Under the better interpretation, Section 7602 provides three separate means of such inquiry. Section 7602(a)(1) provides for an informal, noncompulsory means of inquiry. If an informal inquiry proves inadequate, Sections 7602(a)(2) and 7602(a)(3) provide mechanisms for the formal compulsion of the production of documents and testimony. As the only published opinion to have considered this question explained, "[t]he mere fact that the IRS has the power under § 7602(2) to obtain information by issuing summonses does not require it to do so." *United States v. Barksdale,* 499 F.Supp. 624, 628 (M.D.Fla. 1980).

The contrary interpretation would deny the IRS *any* informal, non-coercive means of gathering information. But many IRS inquiries can be expected to resolve themselves without ever growing into full-blown investigations. Imposing on courts an obligation to referee these nascent investigations would be manifestly unreasonable. The district court observed that "[i]nterjecting the courts into the early stages of every IRS investigation would clearly hamper the IRS' revenue generating capability." To that it should be added that the burden on the district courts could be considerable. We conclude that Agent Lessler's circular letters were an authorized means of requesting cooperation with the IRS investigation.

## II.

The Specks next argue that, had the IRS issued summonses to the taxicab drivers, the Specks would have been entitled to intervene in the investigation. They offer this argument primarily to show the perceived unfairness of permitting the IRS to mail circular letters. But another way of looking at this argument is to see it as the claim that the same rights of intervention should apply when the IRS mails circular letters rather than summonses.

There is a statutory right to quash certain IRS summonses, *see* 26 U.S.C. § 7609, but there is no statutory right to "quash" IRS circular letters. These circular letters are not summonses. Nor are these particular letters the "functional equivalent" of summonses, as appellants argue. This is not, of course, to say that so long as a communication from the IRS is labelled "circular letter,"

the statutory restraints on summonses do not apply. A letter mailed out purportedly under the authority of Section 7602(a)(1), but appearing to make response mandatory, or to threaten IRS action against the recipient if response is not made, would require us to consider whether, as the Specks urge, the letter amounted in practical effect to a summons under Section 7602(a)(2). We leave that question for another day, because the wording of these particular letters did not command response. Rather, the letters issued here stated that Special Agent Lessler "would appreciate [a] response to the questions attached to this letter." A number of recipients elected not to respond, evidently understanding that response was voluntary.

There is nothing asymmetrical about imposing more rigorous safeguards on the IRS' ability to compel compliance through its summons process and the courts' contempt power than on the IRS' ability informally to request voluntary cooperation through the mailing of circular letters. The Specks' argument that statutory safeguards that attend summonses must also attend these particular circular letters is a non sequitur.

Lacking statutory authority for their motion to quash, the Specks assert that there is a generalized constitutional right to intervene whenever the IRS makes inquiries of third parties. We considered this assertion in *Chen Chi Wang v. United States*, 757 F.2d 1000, 1004 (9th Cir.1985), and rejected it. Because there is neither a statutory right nor a generalized constitutional right to intervene and "quash" circular letters, the district court quite properly denied the motion to quash.

### III.

The Specks finally argue that the circular letters "unnecessarily" disclosed so-called "return information" to third parties, in violation of 26 U.S.C. § 6103.[1] This argu-

ment is raised for the first time on appeal. The Specks offer no excuse for their failure to raise this argument below. Consequently, we need not consider it. *Federal Savings and Loan Insurance Corp. v. Butler*, 904 F.2d 505, 509 (9th Cir.1990).

### CONCLUSION

Circular letters are an authorized means for gathering tax information, and the Specks had no right to "intervene" and "quash" them.

AFFIRMED.

---

1. *But see Diamond v. United States*, 944 F.2d 431, 436 (8th Cir.1991). The Eighth Circuit there observed that it was "unnecessary" for an IRS Special Agent to sign a circular letter "Special Agent, Criminal Investigation Division." Significantly, the offending words that the court held

should have been struck were "Criminal Investigation Division," not "Special Agent." *Id.*

