UNITED STATES of America and Frank M. Limbird, Special Agent, Internal Revenue Service, Petitioners-Appellees,

v.

SECURITY BANK AND TRUST COMPANY, Miami, Oklahoma and Rick Hartley, Cashier; Miami Savings & Loan Association, and Arthur Guerrieri, Vice President; Gayle L. Edmondson, Certified Public Accountant; First National Bank & Trust Company, (Miami, OK) and Edwin L. Hazelton, Cashier; First State Bank, Commerce, OK and Gary W. Gilstrap, Vice President; First State Bank and Trust Company, Pittsburg, KS, Respondents,

and

Virgil P. Fox, Respondent-Appellant.

No. 80–1125.

United States Court of Appeals, Tenth Circuit.

Submitted on the Briefs Pursuant to Tenth Circuit Rule 9 March 10, 1981.

Decided Oct. 9, 1981.

---

Gerald M. Handley and James F. Speck of Bellmann, Speck & Handley, Kansas City, Mo., for respondent-appellant.

Hubert H. Bryant, U. S. Atty., and Kenneth P. Snoke, Asst. U. S. Atty., Tulsa, Okl., for petitioners-appellees.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

At the request of appellant Virgil Fox, whose income tax liability was being inves-

tigated, the Security Bank and Trust Company of Miami, Oklahoma, refused to comply with a summons issued by the Internal Revenue Service (IRS or Service) pursuant to Internal Revenue Code (IRC) § 7602, 26 U.S.C. § 7602.[1] The IRS petitioned the district court for enforcement of the summons.[2] Fox intervened as authorized by IRC § 7609(b)(1) and served eighteen interrogatories on the IRS agent who had issued the summons. The agent objected to all but one of the interrogatories as irrelevant. At the hearing on enforcement of the summons Fox moved for an order to compel answers to the interrogatories, which the court denied, directing him instead to propound the interrogatories to the agent who was present at the hearing. The agent answered some of the questions, but the court sustained continued objections to several of the interrogatories. At the conclusion of the hearing, the court ordered that the summons be enforced.

Fox argues on appeal that the discovery he sought was necessary to prove his defense that the government is pursuing a purely criminal investigation and is therefore precluded from use of its civil summons power.

## I

In *Donaldson v. United States*, 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971), the Supreme Court held "that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." Following disagreement among the circuits as to when the "recommendation" has been made,[3] the Supreme Court returned to the subject in *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). There the Court clarified that in determining whether a recommendation has been made, the focus should be upon the institutional posture of the IRS, *i. e.*, whether the IRS had recommended criminal prosecution to the Department of Justice, and not upon a recommendation internal to the IRS, as by the agent in charge of the investigation to superiors. *Id.* at 311–16, 98 S.Ct. at 2364–2367. The Court added that it would not allow the Service, after institutionally deciding to recommend criminal prosecution, to circumvent the restriction by delaying submission of its recommendation to the Justice Department solely "to gather additional evidence for the prosecution." *Id.* at 316–17, 98 S.Ct. at 2367.

The Court summarized the test, then, as twofold:

"First, the summons must be issued before the Service recommends to the De-

---

**1.** 26 U.S.C. § 7602 provides:

"Examination of books and witnesses

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

**2.** The IRS does not have direct authority to enforce a challenged summons; that authority is vested in the federal district courts. *See* 26 U.S.C. §§ 7402(b), 7604(a).

**3.** *See* cases collected in Nuzum, *LaSalle National Bank and the Judicial Defenses to the Enforcement of an Administrative Summons*, 32 The Tax Lawyer 383, 388–89 (1979). Similarly, the circuits split on whether the intentions of the investigative agent determined whether the investigation was for a solely criminal purpose. *Id.* at 389–90.

partment of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken. Second, the Service at all times must use the summons authority in good-faith pursuit of the congressionally authorized purposes of § 7602."

*Id.* at 318, 98 S.Ct. at 2368. For explication of the good-faith standard, the Court referred to its opinion in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964):

> "[The Service] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed...."

As examples of improper purpose, and therefore bad faith, the Court has thus far mentioned use of the summons power to pressure the taxpayer to settle a collateral dispute, *Powell, id.* at 58, 85 S.Ct. at 255; to harass the taxpayer, *LaSalle,* 437 U.S. at 316 n.17, 98 S.Ct. at 2367 n.17; *Powell,* 379 U.S. at 58, 85 S.Ct. at 255; or to allow the Service to fulfill a commitment to gather information for other law enforcement agencies, *LaSalle,* 437 U.S. at 317, 98 S.Ct. at 2367.[4]

### II

In *LaSalle* the Court did not address the extent to which a taxpayer opposing enforcement of a summons may engage in discovery to determine if the summons was validly issued.[5] Certain taxpayer defenses may not require the use of discovery, *e. g.,* the information sought is not relevant to a tax investigation, is already in the hands of the IRS, or is sought to coerce or harass the taxpayer. But the Court in *LaSalle* specifi-

cally mentioned three other defenses available to a taxpayer: 1) the Service had already recommended criminal prosecution to the Department of Justice, 2) the Service had made an institutional commitment to do so but delayed submitting the recommendation solely to gather additional evidence to aid the prosecution, or 3) the Service had agreed to become an information-gathering agency for other law enforcement agencies. To flesh out these defenses, the taxpayer must rely on information peculiarly within the knowledge or files of the Service. *See United States v. Marine Midland Bank,* 585 F.2d 36, 38 (2d Cir. 1978). Therefore, the *LaSalle* Court must have envisioned at least limited discovery.

■ The Federal Rules of Civil Procedure, including the rules relating to discovery, apply in IRS summons enforcement proceedings "except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." Fed.R.Civ.P. 81(a)(3). The Advisory Committee Note to the 1946 amendment, immediately following Rule 81(a)(3), explains that while the rule "allows full recognition of the fact that the rigid application of the rules in the proceedings themselves may conflict with the summary determination desired ..., it is drawn so as to permit application of any of the rules in the proceedings whenever the district court deems them helpful."

■ In considering taxpayer discovery requests, a court must determine whether the information sought is relevant to the issues in contention and should limit discovery to issues relevant to the validity of the summons. *See* Fed.R.Civ.P. 26(b); *United States v. Genser,* 595 F.2d 146, 152 (3d Cir. 1979) (*Genser II*); *United States v. Roundtree,* 420 F.2d 845, 852 (5th Cir.

---

4. In *LaSalle* the Court stated that "[t]hese requirements are not intended to be exclusive. Future cases may well reveal the need to prevent other forms of agency abuse of congressional authority and judicial process." 437 U.S. at 318 n.20, 98 S.Ct. at 2368 n.20.

5. The four dissenters in *LaSalle,* arguing that the sole test should be an objective one of whether the summons was issued prior to a recommendation for criminal prosecution, suggested that inquiry into institutional good faith would "produce little but endless discovery proceedings." 437 U.S. at 320, 98 S.Ct. at 2369 (Stewart, J., dissenting).

1969).[6] Summons enforcement proceedings are intended to be summary; this also should limit discovery. *See, e. g., Donaldson*, 400 U.S. 517, 529, 91 S.Ct. 534, 541, 27 L.Ed.2d 580; *United States v. Church of Scientology*, 520 F.2d 818, 824 (9th Cir. 1975); *United States v. Interstate Tool and Engineering Corp.*, 526 F.2d 59, 62 (7th Cir. 1975). Further, as the *LaSalle* Court observed, both "criminal and civil elements are inherently intertwined" in any tax fraud investigation. 437 U.S. at 309, 98 S.Ct. at 2363. Because discovery in criminal cases is more restrictive than in civil cases, *compare* Fed.R.Crim.P. 16 *and* the Jencks Act, 18 U.S.C. § 3500 *with* Fed.R. Civ.P. 26, more limited discovery than usual in civil cases may be appropriate when validity of an IRS summons is contested. Both the summary nature of the proceeding and the intertwinement with criminal aspects compel a court to weigh the relevancy of the information sought against the extent to which disclosure might delay the civil investigation or jeopardize a criminal investigation.

Considering these same issues, the Third Circuit has established a comprehensive scheme in which a taxpayer contesting a summons is entitled to specific, limited discovery at the outset. After discovery, if the taxpayer either can refute material allegations of the government or present a proper affirmative defense such as governmental bad faith, the taxpayer is entitled to an evidentiary hearing and additional discovery, if necessary to decide the validity of the summons. *See United States v. Garden State National Bank*, 607 F.2d 61, 70 (3d Cir. 1979); *United States v. Genser*, 602 F.2d 69, 72 (3d Cir.) (*Genser III*), *cert. denied*, 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979); *Genser II*, 595 F.2d at 152; *United States v. Genser*, 582 F.2d 292, 302 (3d Cir. 1978) (*Genser I*); *United States v. McCarthy*, 514 F.2d 368, 373 (3d Cir. 1975).

The First and Fifth Circuits have expressly endorsed limiting the taxpayer's discovery to questioning the agent at the section 7602 summons enforcement hearing, noting that if necessary the court can then allow subsequent discovery. *United States v. Salter*, 432 F.2d 697, 700 (1st Cir. 1970); *United States v. Harris*, 628 F.2d 875, 883 (5th Cir. 1980). While this makes it more difficult for the taxpayer to prepare for the hearing, it avoids the prehearing use of depositions and interrogatories that may be unnecessary and that would delay the IRS examination. *See* 7 J. Moore Federal Practice ¶ 81.06[1] (2d ed. 1980).

Applying the principle of limited, relevant discovery to Fox's contention, we first conclude that the trial court did not abuse its discretion when it refused to compel prehearing answers to the interrogatories and instead directed Fox to ask the interrogatories at the hearing.

### III

The court sustained objections to the following interrogatories at the hearing:[7]

"9. State whether or not the Internal Revenue Service has ever had [appellant] under surveillance either by wire or any other means.

a) If [appellant] has been under surveillance, state when, where, how, at whose direction, and under what authority.

b) State whether [appellant] is currently under surveillance, at whose direction, and under what authority.

"10. State whether IRS received information from any law enforcement agency regarding [appellant], at any time prior to the commencement of this investigation.

a) If yes, state from whom and the substance of that information.

b) State the dates on which such information was received.

---

6. The information sought is "relevant" if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

7. Appellant failed to ask some of the interrogatories at the hearing. We believe that the interrogatories asked, except those listed in the text above, received adequate responses at the hearing.

"11. State whether IRS has received information from any law enforcement agency regarding [appellant] subsequent to the commencement of this investigation.

a) If yes, state from whom and the substance of that information.

b) State the dates on which such information was received.

"12. State whether the Internal Revenue Service has sought information from any law enforcement agency regarding [appellant].

a) If yes, state to whom inquiries were made, the nature of the inquiries, and the substance of any information received by the IRS.

b) State the dates on which such inquiries were made.

"13. State whether or not any informant or informants have been or are being used by the Internal Revenue Service in their investigation of [appellant].

a) If yes, state the identity of the informants.

b) State the substance of the information the informants have given you regarding the tax liability of [appellant].

c) State the substance of any information received from informants regarding any criminal tax violations by [appellant]."

Rec. I, 20–22; Rec. II, 51–53.

■ In determining the propriety of these interrogatories, we first recall that Fox's objection to the subpoena was on the ground that the Service was engaged in a purely criminal investigation.[8] The IRS may not use the summons power if it is engaged in a purely criminal investigation; necessarily, the taxpayer must show that the IRS is not actively engaged in a civil investigation. As *LaSalle* observed, a tax fraud investigation normally has both a civ-

il and a criminal component; thus, the Service may use the subpoena power to obtain evidence for its civil investigation even though the same evidence may be used in a criminal prosecution. *See Genser III*, 602 F.2d at 71–72.

■ Consequently, we must determine whether the interrogatories might yield information that suggests the IRS is not actively engaged in a civil investigation. It is evident that Interrogatories Nine through Twelve, dealing with surveillance and whether the Service asked for or received information from other agencies, are wholly irrelevant to whether a civil investigation is underway. Part (c) of Interrogatory Thirteen could yield information suggesting the IRS was investigating possible criminal violations, but even if a *criminal* investigation is underway, the Service may use the summons power so long as it is still actively engaged in a *civil* investigation. Furthermore, the relevancy of evidence that this interrogatory part might produce is outweighed by the possible jeopardy it may cause to other investigations since disclosure of the substance of information received from informants may cause harm to or coercion of the informant or flight by the taxpayer. Additionally, the taxpayer could obtain more direct evidence whether there is an active civil investigation simply by asking the status of the civil investigation, whether and when an institutional posture of recommending criminal investigation was reached, and the dates the investigation was begun and summonses were issued. *See, e. g., Genser II*, 595 F.2d at 152 (discovery tailored to detect inordinate delays); *cf.* Note, *The Institutional Bad Faith Defense to the Enforcement of IRS Summonses*, 80 Colum.L.Rev. 621, 639 (1980) (concluding that even some of the information the Third Circuit would allow to be discovered would be irrelevant).

---

**8.** If the intervenor's objections were on different grounds, or if he sought to engage in discovery to determine if there were grounds for an objection, the permissible scope of discovery would be different, but it would still have to be tailored to the defenses of coercion, harassment, agreement to serve as an information-gathering agency, recommendation to the Department of Justice, or other bad-faith use of the summons power. *See, e. g., Genser I*, 595 F.2d at 152.

Even if the taxpayer's defense was that the Service had agreed to serve as an information-gathering agency, Interrogatories Ten through Thirteen address the information other agencies furnished the IRS, not whether the Service was asked to or had agreed to serve as an information-gathering agency.[9] *Cf. United States v. Davis*, 636 F.2d 1028, 1036 (5th Cir. 1981) (the use by the IRS of information obtained from other agencies does not bear on the Service's institutional posture). *But cf.* Note, *supra*, at 632–33 (arguing taxpayer should be permitted discovery of Service's past sharing of information with another agency).

The danger involved in not allowing a broad taxpayer inquiry into "all communications between the IRS and other agencies" is that the truth will not be revealed. An IRS agent responding to questions about a good-faith, ongoing civil investigation, an agreement to serve as an information-gathering agency, or a recommendation for criminal prosecution, may misrepresent the Service's institutional posture, innocently or deliberately. *Cf. United States v. Wright Co.*, 536 F.2d 1090, 1095 (5th Cir. 1976) (refusing to accept agent's "bare assertion" that a civil investigation was being conducted). The taxpayer may later learn of this misrepresentation through subsequent events or by discovery at the time of criminal prosecution. *See United States v. Serubo*, 604 F.2d 807, 813 (3d Cir. 1979). In a subsequent criminal prosecution, the taxpayer will have a remedy: to ask the court to invoke its supervisory powers to suppress the fruits of the improperly issued subpoena. *See, e. g., id.* at 813–14; *Genser II*, 595 F.2d at 150; *cf. SEC v. Laird*, 598 F.2d 1162, 1163 (9th Cir. 1979) (information gained through SEC investigation may be suppressed in subsequent civil or criminal fraud suit); *Richey v. Smith*, 515 F.2d 1239, 1243–45 (5th Cir. 1975) (supervisory power allows court to compel IRS agents to return taxpayer's property).

Because the discovery appellant sought was irrelevant to the issues in contention, the order of the district court enforcing the summons is affirmed.

McKAY, Circuit Judge, concurring in part and dissenting in part.

The principal obstacle to a unanimous court in *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), was the majority's implicit recognition that a fully prophylactic rule defining the line between legitimate and illegitimate exercise of civil investigative authority would tempt overmuch the tax man to dissemble, if not downright manipulate and lie, thereby making the court an unwitting collaborator in the practice of abusing the civil process to obtain criminal prosecutorial ends. The essence of what the dissent found objectionable in the majority opinion is found in the majority's statement:

[w]ithout doubt, this burden is a heavy one. Because criminal and civil fraud liabilities are coterminous, the Service rarely will be found to have acted in bad faith by pursuing the former. On the other hand, we cannot abandon this aspect of the good-faith inquiry altogether. We shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution. Such a delay would be tantamount to the use of the summons authority after the recommendation and would permit the Government to expand its criminal discovery rights. Similarly, the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases.

437 U.S. at 316–17, 98 S.Ct. at 2367–2368 (1977) (footnotes omitted).

**9.** The interrogatories are also not relevant to showing that a recommendation of criminal prosecution had already been made to the De-

partment of Justice, deliberate delay in making that recommendation, coercion, harassment, or any other taxpayer defense.

The dissent found the effects of discovery (obviously made relevant by the majority opinion) fraught with potential for unjustified delay. The majority had no occasion to catalog for us the details of how to strike the balance between the tax man's temptation to dissemble and the taxpayer's temptation to delay. By permitting most of the taxpayer's permissible discovery to be delayed until the one hearing which must be held anyway, the principal device for preventing unreasonable delay already has been implemented. *United States v. Harris*, 628 F.2d 875 (5th Cir. 1980). At that time and place, I would err more on the side of requiring the tax man to disclose the fact of contact with law enforcement agencies than on the side of permitting him to withhold that information. Disclosing that there has been contact between criminal authorities and civil tax collectors is more likely to compromise legitimate criminal purposes in the imagination than in fact. The frequency and time sequence in which those contacts have been made, together with information already revealed, gives a fairer opportunity to discern whether the court should go further in checking the possibility of dissembling.

It is a constant source of amazement that court opinions so frequently reflect an overriding suspicion that taxpayers will use discovery or other proper legal processes for illegitimate purposes, while at the same time tacitly assuming that no great risk exists that tax collectors will abuse civil process to advance criminal prosecutions of all kinds. What is at stake here is some kind of equilibrium. We have already approved confining discovery to the hearing, severely restricting the application of rules written on their face to apply equally to these as to other matters, and otherwise narrowing the scope of the taxpayer's examination into the legitimacy of the discovery purposes of the IRS. Even the slightest experience in trial practice teaches that conclusory questions rarely help the opposing party to uncover illegitimacy. Hard facts which can be assembled into a construct and examined for consistency and implications are the only really useful discovery tools. Use of civil discovery to circumvent well-settled restrictions on discovery for criminal purposes is one of the illegitimate purposes which the taxpayer has a right to test for himself without relying on self-discipline of the IRS any more than it relies on his self-discipline. Under existing authority, the restrictions are already so extreme as to make the burden almost impossible. The rules appear to invite circumvention.

The beginning place for some modicum of balance is to permit the taxpayer to bring to the court's attention the times and frequency of contacts between civil IRS agents and those whose functions are criminal in nature. The chance that the disclosure of the fact of those contacts and their time sequence will unreasonably compromise legitimate criminal investigations is remote to the point of fancy. On the other hand, the very fact of such contacts raises an implication of entanglement of purposes. It is for the trial court, once the frequency and time of contacts is established along with other evidence, to determine whether it should examine in camera, or otherwise, the details of those communications.

Viewed in this context, the answers to questions 10, 11 and 12, except for the substance of the information exchanged during interagency contacts, are both relevant to an inquiry concerning legitimacy and harmless to any legitimate governmental expectation. The trial court should be directed to order the answers to these questions. As to the balance of the overruled questions, as well as the timing of discovery, I am in agreement with the majority's conclusions.