UNITED STATES of America, and Mark W. Lawler, Special Agent of the Internal Revenue Service, Appellees,

v.

James E. LASK and Ruth L. Lask, Appellants.

No. 82–1526.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1982.

Decided March 30, 1983.

---

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, William P. Wang, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellees; Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., of counsel.

Lashly, Caruthers, Baer & Hamel, P.C., Michael G. Goldstein, James J. Hennelly, Alan D. Pratzel, St. Louis, Mo., for appellants.

Before LAY, Chief Judge, and McMILLI-AN and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Taxpayers James E. Lask and Ruth L. Lask appeal from the district court * order directing enforcement of Internal Revenue Service summonses issued to various third-party recordkeepers. Taxpayers contend (1) that the IRS acted in bad faith in carrying out the investigation, (2) that a portion of the time period covered by the IRS summonses is barred by the statute of limitations contained in 26 U.S.C. § 6501(a) (1976), and (3) that the district court erred in denying taxpayers' discovery requests and in quashing their trial subpoenas duces tecum. We affirm.

In July 1980, Revenue Agent John Barrett, acting on information given to the IRS by an unidentified informant, began an investigation into the federal tax liability of taxpayers for 1978 and 1979. Using information which the taxpayers provided, Barrett found significant discrepancies between the amount of tax liability he calculated for 1978 and 1979 and the amount of tax liability taxpayers reported for those two years. Barrett provided taxpayers' tax representative, Albert Grabel, with copies of his work papers and attached a memorandum requesting comments and an explanation for the discrepancies.

Barrett held a series of discussions with his Group Manager and in February 1981 referred the case to the Criminal Investigation Division of the IRS. In early 1981, Special Agent Mark Lawler, who had been assigned to the investigation, issued a summons to the taxpayers requesting production of various records and documents in their possession. Taxpayers complied with this summons and brought in the requested records. Based on its examination of these

records, the IRS decided to expand its investigation to include taxpayers' 1977 tax returns.

Between May 21, 1981 and June 23, 1981, Special Agent Lawler issued an IRS summons, pursuant to 26 U.S.C. § 7602 (1976), to eight third-party recordkeepers [1] seeking various records and documents in their possession relating to taxpayers' financial activities. Taxpayers directed these recordkeepers not to comply with the summonses.

On January 26, 1982, the Government filed petitions with the district court for enforcement of these eight summonses. Taxpayers moved to intervene pursuant to 26 U.S.C. § 7609(b)(1) (1976), and filed answers to the Government's petitions. Taxpayers also filed a deposition notice and a Rule 34 Request for Production of Documents, and, in preparation for the show cause hearing, served subpoenas duces tecum upon several IRS employees who participated in the investigation.

The district court consolidated the eight summons enforcement proceedings, and on April 30, 1982, ordered that the IRS summonses be enforced. The court quashed taxpayers' deposition notice and subpoenas duces tecum and issued a protective order covering the Rule 34 document request. This appeal followed.

I. The Good Faith Requirements of *United States v. Powell*

Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602 (1976), provides that the IRS, through the use of an administrative summons, may examine any books, papers, records, or persons in determining the tax liability of any person or ascertaining the correctness of any return.[2] The

---

* The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

1. Summonses were issued to the following recordkeepers: St. Louis Union Trust Co., United Missouri Bank of St. Louis, Bank of St. Louis, St. Louis County Bank, Landmark Central Bank & Trust Co., Community Federal Savings & Loan Association, Roosevelt Federal Savings & Loan Association, and Stix and Company, Inc.

2. Section 7602 provides in its entirety as follows:

 **§ 7602. Examination of books and witnesses**

 For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

IRS, however, has no power of its own to enforce the summons but must apply to the district court in order to compel production of the requested materials. *See* 26 U.S.C. §§ 7402(b), 7604(a) (1976). To obtain enforcement of a section 7602 summons, the IRS must fulfill certain requirements. First, the summons must be issued before the IRS recommends to the United States Department of Justice that a criminal prosecution be undertaken. *United States v. LaSalle National Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978). Second, the IRS must show that it has satisfied certain standards of good faith developed by the Supreme Court in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). These standards are fourfold: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the IRS does not already possess the information sought; and (4) the administrative steps required by the Internal Revenue Code have been followed. *Id.* at 57–58, 85 S.Ct. at 254. Once the IRS establishes a prima facie case, the burden shifts to the summonee to disprove one of these elements or to demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of the court's process; that burden is a heavy one. *See United States v. LaSalle National Bank,* 437 U.S. at 316, 98 S.Ct. at 2367; *United States v. Barter Systems, Inc.,* 694 F.2d 163, 167 (8th Cir.1982); *United States v. First National Bank of Mitchell,* 691 F.2d 386, 388 (8th Cir.1982) (per curiam).

In the present case, the record establishes that the IRS made a prima facie case for enforcement of these summonses. Appellants nonetheless contend that the IRS acted in bad faith by violating various provisions of the Internal Revenue Code and of the IRS' Internal Revenue Manual.

 Taxpayers' first argument is that the current summons enforcement proceedings are part of a "second inspection" in violation of 26 U.S.C. § 7605(b) (1976). Section 7605(b) provides that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." The short answer to taxpayers' argument is that the quoted portion of section 7605(b) has no application to third-party records. Although the records being sought by the IRS may document taxpayers' financial activities during 1977–79, they do not belong to the taxpayers, but to the respective third-party recordkeepers. Thus, we do not consider such third-party records as falling within the statutory phrase, "a taxpayer's books of account." *See United States v. MacKay,* 608 F.2d 830, 834 (10th Cir.1979); *United States v. Chemical Bank,* 593 F.2d 451, 458 (2d Cir.1979); *De Masters v. Arend,* 313 F.2d 79, 85–86 & n. 12 (9th Cir.), *cert. dismissed,* 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269 (1963). Accordingly, taxpayers' contention that they have received no written notice that an "additional inspection is necessary" must be rejected.[3]

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

**3.** The only notice that is relevant here is that contained in 26 U.S.C. § 7609(a) (1976). Under section 7609(a), taxpayers are entitled to receive notice that the IRS has issued the summonses in question to the respective third-party recordkeepers. Taxpayers do not contend that they have failed to receive such notice, nor could they successfully urge that here. That taxpayers intervened in the proceeding is ample evidence that they received notice.

■ Taxpayers' second argument is that the IRS had abandoned all civil collection purposes at the time of the issuance of the summonses and that the summonses were therefore issued as part of a purely criminal investigation. If this were the case, the summonses would have been issued for an improper purpose and thus in bad faith. *See United States v. LaSalle National Bank,* 437 U.S. at 316–18 & n. 18, 98 S.Ct. at 2367 & n. 18. Taxpayers concede they have no direct evidence of abandonment but rely instead on circumstantial evidence which they argue is sufficient to satisfy their admittedly heavy burden of proof.[4]

Taxpayers point to Revenue Agent Barrett's work papers for 1978 and 1979, and argue that because "[n]othing in his work papers indicate [sic] that Barrett considered his calculations of civil liability to be estimates or that they were subject to adjustment upon subsequent examination by a CID Special Agent," no valid civil tax determination or collection purpose existed after Barrett completed his examination in December 1980.

■ In effect, taxpayers would have us ignore the testimony of Special Agent Lawler and Revenue Agent Barrett that the IRS is presently engaged in a joint civil/criminal investigation, and that the summonses in question were issued pursuant to this joint investigation. Additional testimony shows that the provision of work papers "could be on-going through the audit" and thus would not necessarily be the final step of an investigation. It is evident that the work papers here were given to taxpayers' representative in order for him to explain the discrepancies between the amount of tax the revenue agent determined taxpayers owed and the amount of tax actually reported. As clearly noted in a memorandum attached to Barrett's work papers, the calculations included therein were "tentative" and "subject to decrease by a satisfactory explanation" of various

items and amounts. Although the record shows that Barrett had discussions with taxpayers' representative, it does not appear that taxpayers have ever provided the IRS with a satisfactory explanation. Nor is there any evidence to suggest that the IRS has made any civil assessment against taxpayers based on the calculations the revenue agent derived from his initial examination. Thus, we cannot construe the revenue agent's provision of work papers to taxpayers' representative as demonstrating a completion of the IRS' civil investigation.

■ Taxpayers emphasize two other circumstantial factors to show the abandonment of a civil purpose: the IRS' use of an informant, and the special agent's substantial role in this investigation. Neither of these requires detailed discussion. As for the first factor, the use of an informant, we do not view the source of the IRS' information to be of any consequence here. *See United States v. LaSalle National Bank,* 437 U.S. at 300, 318, 98 S.Ct. at 2359, 2368 (although IRS derived information for investigation from informant, court found no justification in record to preclude enforcement of summons). The IRS is permitted to accept all information that is offered it. *See United States v. Davis,* 636 F.2d 1028, 1036 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *United States v. Cortese,* 614 F.2d 914, 920 (3d Cir.1980). The second factor has been raised numerous times before and has been accorded little significance. *See, e.g., United States v. LaSalle National Bank,* 437 U.S. at 314–16, 98 S.Ct. at 2366; *United States v. Pillsbury Credit Union,* 661 F.2d 1195, 1197 (8th Cir.1981) (per curiam); *United States v. Davis,* 636 F.2d at 1036; *United States v. Moll,* 602 F.2d 134, 139 n. 7 (7th Cir.1979). Although special agents are members of the IRS' Criminal Investigation Division, they may be charged with both criminal and civil responsibilities. *See United States v. Pillsbury Credit Union,* 661

---

**4.** Taxpayers do not contest the district court's findings that the IRS has not referred the investigation of taxpayers to the United States Department of Justice for prosecution, and that

Special Agent Lawler has not recommended criminal prosecution of taxpayers to his supervisors.

F.2d at 1197; *United States v. Garden State National Bank*, 607 F.2d 61, 65 n. 3 (3d Cir.1979); [II Audit] Internal Revenue Manual (CCH) § 4565.31(4), at 8177–15 (Nov. 21, 1980). This was the case here as the evidence shows that the special agent was seeking to determine taxpayers' correct tax liabilities as well as determining whether to prosecute.

■ Taxpayers refer to various other evidence to show the absence of a civil purpose. This includes the revenue agent's uncommon practice of referring taxpayers' case to the Criminal Investigation Division after his work papers were turned over to taxpayers for review, as well as the agent's use of Form 2797 Referral Report for Potential Fraud cases in making the referral. We have carefully reviewed the record, and find this evidence to be unpersuasive.

Taxpayers' third argument is that the IRS has violated various sections of the Internal Revenue Manual in conducting its investigation. Taxpayers claim that Special Agent Lawler violated section 4055.22 of the Manual, [1 Audit] Internal Revenue Manual (CCH) § 4055.22, at 7037 (Apr. 2, 1979), by attempting to contact Mrs. Lask directly after taxpayers had filed a power of attorney with the IRS. Taxpayers also claim that Revenue Agent Barrett violated section 4253.2(e) of the Manual, [1 Audit] Internal Revenue Manual (CCH) § 4253.-2(e), at 7235–6 (Nov. 2, 1981), by failing to document discussions that he had with his group manager concerning the underpayment of tax that he calculated for taxpayers' tax years 1978 and 1979.

■ With respect to the alleged violation of section 4055.22 of the Internal Revenue Manual, it suffices to say that this section has no application to the actions of the special agent here. This section establishes procedures to be used by the Examination Division, while another provision of the Manual, [5 Administration] Internal Revenue Manual (CCH) § 9359, at 28,149 (Aug. 16, 1982), governs the conduct of agents of the Criminal Investigation Division, including the conduct of the special agent here. *See United States v. Will,* 671 F.2d 963, 967 (6th Cir.1982). Our review of these guidelines reveals that there is no requirement that any contact with the taxpayers be made initially through the representative identified in the power of attorney.[5]

■ With respect to section 4253.2(e), taxpayers have not demonstrated that a violation has occurred. Section 4253.2(e) provides:

> (e) If the examination reveals a material understatement of income in a given year, the case should be discussed with the group manager in regard to expanding the examination to subsequent or prior years and for possible referral to the Criminal Investigation function for consideration of fraud potential. *This discussion is mandatory in all examinations with understatements of income in excess of $10,000 in a given year. These discussions will be documented in the workpapers.*

*Id.* (emphasis added). Revenue Agent Barrett testified that none of the work papers he provided to taxpayers' representative contained any documentation of discussions with his group manager, even though the work papers show understatements of income in excess of $10,000 for each of the tax years 1978 and 1979. Nonetheless, because the investigation is not yet complete, and because section 4253.2(e) imposes no time requirement for documenting discussions, we cannot say that a violation has occurred.

---

**5.** Section 9359 cross-references section 342.19 of the Handbook for Special Agents, [6 Administration] Internal Revenue Manual (CCH) § 342.19, at 28,681–7 (Aug. 12, 1982), which provides that a taxpayer or his representative who has a power of attorney must specially request, either orally or in writing, that contacts with the taxpayer by the IRS be made through the taxpayer's representative. The implication is that if the taxpayer or his representative fails to make this specific request, a special agent may contact the taxpayer directly. We find no evidence in the record that taxpayers or their representative made a specific request.

In sum, taxpayers have not shown any conduct in this investigation from which to infer institutional bad faith.

## II. The Statute of Limitations

■ Taxpayers also contend that the three-year statute of limitations for ordinary assessment deficiencies, 26 U.S.C. § 6501(a) (1976), should bar enforcement of these summonses as they relate to the 1977 tax year.[6] This question, however, has been determined adversely to taxpayers in *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), in which the Supreme Court stated, "The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing . . . that the statute of limitations for ordinary deficiencies has run or that the records in question have already been once examined." The Court further observed, "The present three-year limitation on assessment of ordinary deficiencies relieves the taxpayer of concern for further assessments of that type, but it by no means follows that it limits the right of the Government to investigate with respect to deficiencies for which no statute of limitations is imposed." *Id.* at 56 n. 15, 85 S.Ct. at 254 n. 15. In this case, discovery of a false or fraudulent return would completely remove any limitation on assessment under 26 U.S.C. § 6501(c)(1) (1976). Although no fraud is alleged in the petitions for enforcement, this court has held that the IRS may require the production of records for time-barred years which are relevant to its investigation, even though there is no allegation or evidence of fraud. *United States v. Giordano,* 419 F.2d 564, 568 (8th Cir.1969), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970). To hold otherwise "might well seriously impede the Government's right to collect lawfully due taxes solely on account of a taxpayer's refusal to cooperate and his utilization of delaying and hypertechnical tactics." *Id.* Accordingly, we conclude that the three-year statute of limitations does not bar enforcement of these summonses.

## III. The Discovery Requests

■ Finally, taxpayers contend that the district court erred in denying their discovery requests and in quashing the subpoenas duces tecum. The district court has discretionary authority under Fed.R.Civ.P. 81(a)(3) and may limit the availability of discovery in a summons enforcement proceeding. *See Donaldson v. United States,* 400 U.S. 517, 528–29, 91 S.Ct. 534, 541, 27 L.Ed.2d 580 (1971); *United States v. National Bank of South Dakota,* 622 F.2d 365, 367 (8th Cir.1980) (per curiam). Because of the summary nature of an enforcement proceeding, discovery is the exception rather than the rule. *See United States v. Moon,* 616 F.2d 1043, 1047 (8th Cir.1980) (per curiam); *see also United States v. Security Bank & Trust Co.,* 661 F.2d 847, 851 (10th Cir.1981) (limited discovery appropriate because criminal and civil elements inherently intertwined in tax investigation). The taxpayer must make a substantial preliminary showing of abuse of the court's process before even limited discovery need be ordered. *See United States v. Moon,* 616 F.2d at 1047; *United States v. Morgan Guaranty Trust Co.,* 572 F.2d 36, 42 n. 9 (2d Cir.), *cert. denied,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978); *United States v. Salter,* 432 F.2d 697, 700 (1st Cir.1970).[7] In this case, taxpayers had an opportunity directly to

---

**6.** The statute provides as follows:

 **§ 6501. Limitations on assessment and collection**
 **(a) General rule**
 Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no pro-

ceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

**7.** In *United States v. Salter,* 432 F.2d 697 (1st Cir.1970), the First Circuit adopted the following recommendation for regulating discovery in an enforcement proceeding:

 The general solution would probably be for the district court to proceed directly to a hearing at which, if desired, the summonee could examine the agent who issued the summons, concerning his purpose. The court

examine several IRS employees who participated in the investigation. In addition, taxpayers were afforded a full opportunity to cross-examine the Government's chief witness, Special Agent Lawler. Since taxpayers failed to raise any substantial question regarding the validity of the Government's purpose, the district court was well within its discretion to deny taxpayers' discovery requests and to quash the subpoenas duces tecum.

The order of the district court enforcing the summonses is affirmed.

could then, by observation and, where necessary, its own questioning of the agent, make its own determination of whether exploration, as by discovery, seemed to be in order. *Id.* at 700. The court further observed, "If, at the end of the hearing, there remains a substantial question in the court's mind regarding the validity of the government's purpose, it may then grant discovery." *Id.* The district court appears to have followed these procedures. Such procedures help avoid the prehearing use of depositions and interrogatories that may be unnecessary and that would delay the IRS' examination. *See generally* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 81.06[1] (2d ed. 1982).