UNITED STATES of America, Plaintiff,

v.

Joseph STEIN, also known as Joseph Y. Stein, and Lawrence Rosenberg, Defendants.

No. 70 CR 317.

United States District Court, N. D. Illinois, E. D.

Feb. 10, 1971.

Wm. J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff.

George B. Collins, Melvin B. Lewis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

Defendants Stein and Rosenberg have been charged in a multiple count indictment with a mail fraud scheme involving a financial consultant service. The accused business operated in part out of a Chicago office from which the government obtained, in a manner hereinafter described, certain records. These are sought to be suppressed by appropriate motion of both defendants. Briefs have been exchanged and evidence taken.

Joseph Stein, having pled guilty to the charges in 70 CR 317, the joint motion to suppress by defendants Stein and Rosenberg is moot as to Stein. The motion of Rosenberg is the subject of this memorandum and order.

The evidence indicates that the records in question and sought to be suppressed were delivered to federal authorities by one Erwin Blaz who had previously appeared before a federal grand jury and produced documents, and who later called the authorities to say he had discovered additional records.

The government has established that Blaz delivered these records, which he said were newly discovered, to federal authorities for safekeeping, after which a grand jury subpoena duces tecum was issued covering them, and in response thereto, Blaz subsequently appeared and identified them. The government states that it thereafter examined them for the first time. At the time of the hearing on this motion, Blaz was deceased.

The records sought to be suppressed were contained in a medium sized cardboard carton, which for convenience during the hearing and in this memorandum is referred to as the Blaz box.

The central issues in the case are the factual question of how Blaz came into possession of these records, and the legal question of whether the manner of his acquiring possession taints the evidence despite his voluntary delivery to the government. The fact of the grand jury subpoena is deemed to be of no legal consequence in the determination of these issues.

The government denies any involvement in the acquisition of the box by Blaz, and the evidence supports this position. Therefore, momentarily putting aside the question of whether the box was abandoned by defendants and found by Blaz, as he claimed, or stolen by him, as the defendants claim, we consider first the legal question whether the government can take voluntary delivery from a third party of evidence usable against defendants, without regard for the manner in which the third party acquired the records, as long as the government was no way involved in inspiring or participating in the acquisition. This question is posited in its most fundamental form, by assuming for purposes of discussion that Blaz stole the records in question, without the instigation or knowledge of any agent of the government.

The memoranda of the government establish the proposition that where the government was not involved in the circumstances under which the person subpoenaed came into possession of the records, the fourth amendment does not apply. United States v. McGuire, 381 F.2d 306 (2 Cir. 1967).

Defendant's cases do not controvert this proposition. In Corngold v. United States, 367 F.2d 1 (9th Cir. 1966), relied upon by defendants, the seizure of defendant's packages in shipment was done by federal agents. In Schwimmer v. United States, 232 F.2d 855 (8th Cir. 1956), the court reaffirmed the right of the owner of records to move to quash subpoena issued against custodian of records. The ultimate issue involved in the instant case was not reached by the Eighth Circuit in *Schwimmer.*

In United States v. Guterma, 272 F.2d 344 (2d Cir. 1959), the government subpoena reached out for the contents of a

safe in the custody of Jacobs, but accessible only to Guterma. The ruling quashing the subpoena turns on the fact that Guterma retained a significant element of possession since he alone could open the safe.

In Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), the government came into possession of the records by means of a search of Stoner's hotel room with the consent of the hotel clerk. These facts are not analogous to the situation here.

The principle to be applied, therefore, permits acceptance by the government of records submitted by Blaz without regard for how Blaz got them as long as the government was not involved in their acquisition. We need not consider the question whether this rule would apply if the agent of the United States knew they were stolen, since there is no convincing evidence that the federal authorities here knew or should have known of this fact.

Despite this, however, the question raised in this case remains a close one. The records are apparently those of the defendants, and the government's possession of them clearly presages their use against the defendant. The defendant claims Blaz stole them, and produces evidence which, while not preponderant, is at least susceptible to that inference. It is not appropriate in this circumstance to be satisfied with a mechanical application of the general rule without consideration of one final aspect of the case.

Beginning at least in November, 1969, Blaz was in communication with federal officials and in a posture of ostensible cooperation with the government. The possibility of his own indictment was obviously present in his mind. After their first meeting, Agent McClanahan kept in touch with Blaz from time to time, and a month or more before Blaz found the box in question, he and McClanahan discussed the fact that Blaz had files on the First Available Fund. Although the record is not precise as to the time, it reveals that Blaz discussed his desire not to be indicted with an Assistant United States Attorney, and offered contemporaneously some papers from his office concerning First Available Fund, at which time he was told that he was not the target of the investigation. He was informed that these papers proved to be useless as an aid to the government.

Subsequently, on March 19, 1970, Blaz voluntarily produced more documents, this time the Blaz box, with a revelation that he had obtained these from the office shared with Rosenberg, and that Rosenberg was asking for their return.

There is no suggestion in these revelations of impropriety on the part of government agents. There is a clear pattern, however, of attempts to procure the cooperation of Blaz, known to be a co-tenant of an office with defendants Stein and Rosenberg (then under investigation), and known, further, to have been involved with them in at least one of their mail enterprises under scrutiny, and Blaz was obviously under the impression, which the government encouraged, that his cooperation would result in his being left out of the mail fraud indictment the government was working toward. It is possible to conclude from the record that Blaz was in this frame of mind when he procured the Blaz box from the office he shared with Stein and Rosenberg. There is no clear and convincing evidence that he was an agent of the government at this time, but there is ample reason to believe that Blaz thought the government would reward him for turning over these records; just as there is no clear and convincing evidence that he stole the records, but there is ample reason to believe that he might have done so.

Under these circumstances, it cannot be said that the government was totally divorced from the situation under which Blaz came into possession of these records. Against this background, we cannot mechanically apply any rule of law without recognizing that Rosenberg in this fact situation stands to have his

fourth amendment right somewhat diminished by the use of these records in evidence against him.

For these reasons, the motion of the defendant Rosenberg to suppress the evidence, for convenience referred to herein as the Blaz box, and its contents, is granted.