602 F.2d 134
 79-2 USTC P 9480
 UNITED STATES of America, and Anthony Butzek, Special Agent,
Internal Revenue Service, Petitioners-Appellants,
v.
Edwin A. MOLL, Respondent-Appellee.
UNITED STATES of America, and Anthony Butzek, Special Agent,
Internal Revenue Service, Petitioners-Appellants,
v.
George B. COLLINS, Respondent-Appellee.
 Nos. 79-1007, 79-1009.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 29, 1979.
Decided July 13, 1979.
 
 William A. Whitledge, Dept. of Justice, Tax. Div., Washington, D.C., for petitioners-appellants.
 Richard T. Wimmer, Collins & Amos, Chicago, Ill., for respondent-appellee.
 Before SPRECHER, GEWIN* and TONE, Circuit Judges.
 GEWIN, Circuit Judge:
 
 
 1
 The United States and Anthony Butzek appeal from the district court's orders denying enforcement of two Internal Revenue summonses. We reverse.
 
 
 2
 Butzek is a Special Agent of the Internal Revenue Service. In September 1976 he was assigned by the agency's Criminal Investigation Division to investigate the 1971-1975 income tax liabilities of Edwin A. and Natalie K. Moll. The Criminal Investigation Division initiated the inquiry after its probe of Moll's corporation, Professional Medical Guidance Corporation, became stymied. Butzek secured the assignment of a revenue agent to the investigation for the purpose of determining any potential civil tax liabilities.
 
 
 3
 During the investigation, Butzek contacted accountant Earl Epsteen, who had prepared the taxpayers' income tax returns for the years in question, and requested the records and documents relative to the preparation of the returns. Epsteen claimed that he had turned the records over to Moll. Butzek contacted Moll, advised him of his Fifth Amendment right not to answer questions, as required by agency policy, and requested him to produce the records. Moll refused and pursuant to § 7602 of the Internal Revenue Code the agent served a summons on him requiring production of all records, correspondence and documents of Earl Epsteen relating to preparation of appellee's returns for the years 1971-1975.
 
 
 4
 Upon receipt of the summons, Moll informed Butzek that he had turned the workpapers over to his attorney, George Collins. Accordingly, the agent served a similar summons on Collins demanding the documents. Collins refused to comply and the government initiated enforcement proceedings in the district court. Because it believed Moll still had possession of some of the records, the government requested enforcement of both summonses.
 
 
 5
 In denying enforcement, the district judge held that attorney Collins was protected from the summonses by the attorney-client privilege. As for Moll, the court found that he was the subject of a criminal investigation and hence was privileged under the Fifth Amendment to refuse to comply with the summonses.
 
 
 6
 Because the instant case is indistinguishable from Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), we must reverse the findings of the district court.[1] The factual setting involved here is virtually identical to those analyzed by the Supreme Court in Fisher.[2] In that case, a taxpayer upon learning of his investigation by an IRS agent obtained from his accountant those documents relating to the accountant's preparation of his returns and transferred them to his attorney for legal assistance. The Internal Revenue Service served a summons on the attorney who refused to comply. The Supreme Court held that the taxpayer's attorney was not protected from compelled production by the Fifth Amendment. 425 U.S. at 397, 96 S.Ct. 1569. The majority further decided that the Fifth Amendment would not have protected the taxpayer from forced disclosure of his accountant's workpapers had they been in his possession. Id. at 409-10, 96 S.Ct. 1569. It then concluded that since the taxpayer under the facts had no Fifth Amendment right to refuse to comply with the summons, the attorney-client privilege did not protect his attorney from compelled production. Id. at 404-05, 409-10, 96 S.Ct. 1569.
 
 
 7
 The Court reasoned that the self-incrimination privilege protects only the taxpayer under investigation from being forced to be a witness against himself. It does not extend to the taxpayer's attorney who is compelled to produce documents pertaining to his client.
 
 
 8
 The taxpayer's privilege under (the Fifth) Amendment is not violated by enforcement of the summonses involved in these cases because enforcement against a taxpayer's lawyer would not "compel" the taxpayer to do anything and certainly would not compel him to be a "witness" against himself. The Court has held repeatedly that the Fifth Amendment is limited to prohibiting the use of "physical or moral compulsion" exerted on the person asserting the privilege (citations omitted).
 
 
 9
 425 U.S. at 397, 96 S.Ct. at 1574.
 
 
 10
 The Court then examined the attorney-client privilege and resolved that it protects attorneys from compelled production in the limited circumstances where the taxpayer has transferred the papers to the attorney for the purpose of securing legal advice and " 'The client himself would be privileged from production of the (documents), either as a party at common law . . . or as exempt from self-incrimination[3] . . .' " Id. at 404, 96 S.Ct. at 1578. To determine whether the attorney-client privilege was implicated, the Court addressed the prerequisite question of whether the documents could have been obtained by summons from the taxpayer while they were in his possession.
 
 
 11
 The question was answered in the affirmative, the majority holding that the Fifth Amendment did not protect the taxpayer from being compelled to yield those accountant's records in his possession. Reiterating the principle that the self-incrimination privilege proscribes only compelled and incriminating testimony by an accused, the court concluded that the compelled disclosure of an accountant's workpapers in the taxpayer's possession was not an act sufficiently testimonial in nature to implicate the Fifth Amendment.
 
 
 12
 A subpoena served on a taxpayer requiring him to produce an accountant's workpapers in his possession without doubt involves substantial compulsion. But it does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat or affirm the truth of the contents of the documents sought. Therefore the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications. (citations omitted)
 
 
 13
 425 U.S. at 409, 96 S.Ct. at 1580. Since the taxpayer while in possession of the records was not protected from compelled production by the Fifth Amendment, his attorney could not assert the attorney-client privilege to defeat the summons. Id. at 405, 409-10, 96 S.Ct. 1569.
 
 
 14
 Likewise in the case at bar Moll and Collins may not avail themselves of the self-incrimination or attorney-client privileges to prevent enforcement of the government summonses. The documents sought are very similar to those subpoenaed in Fisher[4] and Moll's compelled transfer of his accountant's records is not sufficiently testimonial in character to bring the Fifth Amendment into play.[5] Excluded from the ambit of the Fifth Amendment, the papers are not protected in attorney Collins' hands by the attorney-client privilege.
 
 
 15
 Notwithstanding Fisher's explicit holding, appellees maintain that the court properly denied enforcement of the summonses because they were issued solely for a criminal purpose. The premise of this argument is that the Internal Revenue Service had effectively abandoned that portion of the investigation devoted to detecting possible civil liabilities. Therefore, it is argued that the workpapers were sought exclusively for the criminal investigation, an abuse of process proscribed by United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).
 
 
 16
 In order to obtain enforcement of a § 7602 summons, the Internal Revenue Service must fulfill certain specific requirements. First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution be undertaken. Donaldson v. United States, 400 U.S. 517, 536, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Second, the Service must show that it has satisfied certain standards of good faith developed by the Supreme Court in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Among these are that the investigation is being conducted pursuant to a legitimate purpose, that the information sought may be relevant to that purpose, that the information is not already in the Service's possession and that statutorily required administrative procedures have been followed. Id. at 57-58, 85 L.Ct. 248.
 
 
 17
 Once this showing is made, the burden rests upon the taxpayer opposed to enforcement of the summons to prove a lack of good faith, that the government has abandoned in the institutional sense its pursuit of possible civil penalties. United States v. La Salle National Bank, 437 U.S. 298, 315, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221, 235 (1978). Defining this burden of proof as a "heavy one", the Supreme Court in LaSalle reasoned that its allocation to the taxpayer was necessary because until a formal recommendation for criminal prosecution is made by the Service to the Justice Department, the criminal and civil elements of an investigation are "inherently intertwined," with "coterminous," criminal and civil fraud liabilities. Id. 437 U.S. at 308, 315, 98 S.Ct. at 2363, 2366, at 231, 235. For willful submission of a fraudulent tax return, a taxpayer under § 6653(b) of the Internal Revenue Code may be subjected to a civil penalty equal to 50% Of the underpayment as well as criminal penalties under §§ 7206 and 7207. Thus when the Service seeks by way of summons records relative to tax liabilities, it presumably inquires about both "the possibility of criminal misconduct" and the "appropriateness of assessing the 50% Civil tax penalty." Id. 437 U.S. at 309, 98 S.Ct. at 2363, at 231. It is for the party opposing the summons to establish that the inquiry has no civil purpose and thus the summons was the product of bad faith.
 
 
 18
 We are satisfied that agent Butzek, by his petition, affidavit and testimony at the hearing made the required showing of good faith under Powell to warrant issuance of the summonses. On the other hand, appellees Moll and Collins did not carry their heavy burden of disproving that the Service had a concomitant civil purpose for the information. Indeed, the record reveals that appellees did not raise the issue at the enforcement proceeding below and the court made no factual findings on it.[6] They presented no witnesses or direct evidence at the hearing. Submitting the issue initially on this appeal, appellees point to certain testimony by Butzek on cross-examination which they claim conclusively shows abandonment of the civil investigation. We are unpersuaded. This evidence establishes only that agent Butzek was primarily concerned in the inquiry with Moll's potential criminal liability.[7] This was his function as a special agent.
 
 
 19
 Having failed to show an institutional abandonment of the pursuit of potential civil liabilities, appellees are fully subject to the commands of the summonses. To ensure that the Service obtains all of the pertinent documents, the district court is to grant enforcement as to both Moll and Collins. The case is reversed and remanded for proceedings consistent with this opinion.
 
 
 20
 Reversed and Remanded.
 
 
 
 *
 United States Senior Circuit Judge for the Fifth Circuit sitting by designation
 
 
 [1]
 Apparently neither party referred to Fisher in the hearing below
 
 
 [2]
 Certiorari was granted in Fisher to resolve conflicting decisions between the Third and Fifth Circuits. The decisions, Unted States v. Fisher, 500 F.2d 683 (3d Cir. 1974) (en banc) and United States v. Kasmir, 499 F.2d 444 (5th Cir. 1974) involved the same factual situation
 
 
 [3]
 The Court explained the policy for this narrow rule as follows:
 The propose of the (attorney-client) privilege is to encourage clients to make full disclosure to their attorneys (citations omitted). As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice. However, since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege (citations omitted). . . . This Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client . . . Thus, even absent the attorney-client privilege, clients will not be discouraged from disclosing the documents to the attorney and their ability to obtain informed legal advice will remain unfettered. It is otherwise if the documents are not obtainable by subpoena duces tecum or summons while in the exclusive possession of the client, for the client will then be reluctant to transfer possession to the (attorney) unless the documents are also privileged in the latter's hands.
 425 U.S. at 403-04, 96 S.Ct. at 1577-1578.
 
 
 [4]
 The summonses were broader in scope that those in Fisher in terms of the range of documents sought. In our opinion, however, Fisher's principles govern all the items requested in the summonses. Moreover, appellees did not challenge the summonses as overbroad in the enforcement hearing below and have not done so on this appeal
 
 
 [5]
 The Fisher Court recognized that the act of producing evidence in response to a summons or subpoena has something of a testimonial quality; by complying with the summons, the taxpayer "tacitly concedes" the existence of the evidence, his control over it and his belief that the evidence is that described in the summons. 425 U.S. at 410, 96 S.Ct. 1569. The Court noted that whether the Act of transferring evidence, apart from the content of the evidence, is sufficiently "testimonial" and "incriminating" to invoke the Fifth Amendment will depend on the facts of each case. Id. at 410-411, 96 S.Ct. 1569. The Court then held that the testimony inherent in a taxpayer's disclosure of his accountant's workpapers was not of a sufficient "level" to apply the Fifth Amendment. Id. The same holds true in the case at bar
 
 
 [6]
 Appellees place great emphasis on the district court's statements at the hearing's conclusion that Agent Butzek was conducting a "criminal investigation" and that Moll was "the subject of the criminal investigation." The context of the remarks was Judge McGarr's determination that the investigation had sufficient criminal overtones to permit Mr. Moll to assert his Fifth Amendment privilege against self-incrimination. At no time did the court find that the summonses were issued exclusively for a criminal purpose
 
 
 [7]
 The evidence of a sole criminal purpose included Agent Butzek's reading Moll his rights at his home, the lack of active involvement in the investigation by the revenue agent, and the fact that some of the years in question were passed for assessment purposes. This proof was of little significance. In informing Moll of his rights, the agent was simply adhering to standard Service policy. Further assessment on the "closed" years could be made by the government under § 6501(c) of the Code if fraud was shown. Finally, that the revenue agent was inactive did not show a sole criminal purpose. In LaSalle no revenue agent was assigned to the investigation but the Supreme Court did not find this fact to be determinative or of importance