**UNITED STATES of America and Thomas R. Collins, Special Agent, Internal Revenue Service, Petitioners,**

v.

**Elton K. FEFFER, as Vice President of Continental Plastics, Inc., and Continental Plastics, Inc., Respondents.**

**No. 83–MISC–77.**

United States District Court, E.D. Wisconsin.

Dec. 7, 1984.

---

Ann M. Kisting, Asst. U.S. Atty., Milwaukee, Wis., for petitioners.

Richard A. Petrie, Meldman, Case & Weine, Ltd., Milwaukee, Wis., for respondents.

## DECISION AND ORDER

WARREN, District Judge.

Presently before the Court is the petition of the United States of America and Thomas R. Collins, Special Agent of the Internal Revenue Service, to enforce an IRS summons for the testimony of and production of certain records by respondents Elton K. Feffer and Continental Plastics Corporation. The Court, having carefully considered this matter, concludes, for the reasons set forth herein, that the respondents have failed to carry their burden of proof under *United States v. Kis*, 658 F.2d 526 (1981), and that the summons must therefore be enforced.

## BACKGROUND

This action was commenced on July 25, 1983, when the United States and Thomas R. Collins, Special Agent of the Internal Revenue Service ("IRS"), filed a petition, pursuant to 26 U.S.C. §§ 7402(b) & 7604(a), for enforcement of a summons served on the respondents on November 17, 1982. By that summons, the IRS seeks certain records of respondent Continental Plastic Corporation[1] for calendar years 1977, 1978, 1979, 1980 and 1981, including, among other things, disbursement and cash receipt journals, sales loss statements, bank records, and corporate minute books. *See IRS Summons* [Attachment] (November 17, 1982) (Exhibit 1 of Enforcement Petition).

The Government petitioners state that the testimony and materials they seek are believed to contain information needed by the IRS "to investigate the Federal tax liability of Elton K. Feffer for the years 1978, 1979, 1980 and 1981 ... [and to] correctly establish financial starting and ending periods in an indirect method of computation for the years under investigation." *Declaration* of Raymond H. Robertson at 3 (December 13, 1982) (Exhibit 2 of Enforcement Petition).

In its petition, the Government also states that on the return date of the summons, respondent Feffer failed to appear, neither testifying nor producing the requested documents; indeed, "[his] refusal to comply with the summons continues to date." Government's *Petition To Enforce Internal Revenue Summons* at 3 (July 25, 1983). The Government further states that the materials and testimony it seeks are not in its possession or control, that no recommendation for the criminal prosecution of the respondents has been made to the Department of Justice, and that the IRS has followed all procedural requirements of the law in pursuing its request for the subject testimony and materials.

On July 26, 1983, the Court ordered the respondents to submit, within 30 days of service, a written response to the Government's petition, "supported by appropriate affidavit(s) alleging *specific facts* in rebuttal to the petitioners' pleadings or in support of an appropriate affirmative de-

---

1. The matter, as initiated, sought enforcement of the summons as to "Continental Plastics, Inc.," in addition to Elton K. Feffer; indeed, the caption of the case is still fashioned consistent with this original designation of the corporate respondent.

   Based on the respondents' denials and affirmative defenses in their Answer to the Enforcement Petition and the testimony adduced during the hearing on this matter, the Court concludes that the correct name of the corporate respondent is Continental Plastic Corporation and shall refer to this party accordingly throughout its memorandum decision.

fense." Court's *Order To Show Cause* at 1 (July 26, 1983) (emphasis in original). Pursuant to the procedures set forth in *United States v. Kis*, 658 F.2d 526 (7th Cir.1981) (*see infra* at 7–11), the Court also notified the respondents of their right to pursue discovery in this matter and of their entitlement to an evidentiary hearing if the Court concluded that any allegations of appropriate facts in their response were .sufficiently specific to warrant such a hearing. The Court also notified the respondents that if they submitted a response that failed to allege appropriate specific facts in rebuttal to the Government's pleadings or in support of some affirmative defense, an order enforcing the summons would issue.[2]

By their Answer of September 12, 1983, the respondents deny that the subject investigation was undertaken for the purpose of ascertaining the correct tax liability of Elton K. Feffer for the year 1977 and offer some sixteen affirmative defenses—among them, that the subject IRS summons was "issued for the improper purpose of furthering the Government's wrongful conduct ... [in violation of the] respondents' constitutional rights under the Fourth Amendment"; that enforcement of the summons would constitute an abuse of the Court's process; and that the petitioners already have in their possession much of the information sought pursuant to the summons. Respondents' *Answer to Petition* at 6–7 (September 12, 1983).

Most significantly, however,. it is in the respondents' Answer and supporting affidavit of counsel that the issue central to this dispute was first articulated—namely, whether an employee's provision to IRS agents of certain of the respondent-employer's corporate records and documents was undertaken and continued "at the direction and with the knowledge, participation and approval of the agents ... [and thus] constituted an unlawful search and seizure by

the Government in ... disregard of Respondents' rights...."

Respondents' *Answer to Petition* at 5–6 (September 12, 1983). It is the respondents' position, set forth in their Answer and maintained throughout the subsequent hearing on the Government's request for enforcement, that one Diane M. Langron, while an employee of respondent Continental Plastic Corporation,

> secretly and illegally took various records and documents, or copies thereof, from the offices of the corporate Respondent under the guidance and direction, and with the knowledge, participation and approval of the agents of the Internal Revenue Service.... An allegedly complete list of the records secretly and illegally taken is included in the Declaration of [IRS] Special Agent Raymond Robertson. His Declaration under oath, however, avoids any implication or admission that the Special Agents were participating behind the scenes in directing or suggesting the illicit search and seizure of Respondents' records. Special Agent Robertson erroneously states in his Declaration (par. 6) that after contacting the Special Agents in December, 1981, Ms. Langron "brought with her" the records in question....

> The illicit taking and copying of Respondents' records by Ms. Langron with the knowledge, participation and approval .of the Special Agents constituted an unlawful search and seizure by the Government in clear violation of Respondents' rights under the Fourth Amendment to the Constitution.

*Affidavit* of Robert E. Meldman at 3–4 (September 12, 1984). It is on this principal basis that the respondents oppose enforcement of the subject IRS summons.

The Court, having reviewed carefully both the Government's Enforcement Petition and the Answer and supporting affida-

---

**2.** Because two pages of the Government's Enforcement Petition were inadvertently omitted from the pleadings as initially served on the respondents, the Court granted these parties a brief extension of time in which to file a written response. Their Answer, as described below, was thus interposed on September 12, 1983, in a timely fashion. *See* Court's *Order* of August 29, 1983.

vit filed by the respondents, concluded that while the Government had established a prima facie case for issuance of the summons, the respondents had alleged facts sufficient to support an inference of wrongful conduct by the Government. Accordingly, pursuant to the procedures set forth by the Court of Appeals for the Seventh Circuit in *United States v. Kis*, 658 F.2d 526 (1981) *(see infra* at 977–979), the Court conducted a two-day adversarial hearing on November 1 & 2, 1983.

During the course of those proceedings, the substance of which is discussed below, the Court heard testimony from three witnesses for the Government—namely, former IRS Special Agent Raymond H. Robertson, petitioner Thomas R. Collins, and Diane M. Langron—and from one witness for the respondents, Deborah L. Adney. In addition, the Court listened to a tape recording of testimony given before a hearing examiner of the Job Service Division—Unemployment Compensation of the Wisconsin Department of Industry, Labor and Human Relations, on the benefits claim of Diane M. Langron involving the account of her former employer, respondent Continental Plastic Corporation. At the conclusion of all testimony, the Court entertained argument by counsel for both sets of parties and thereafter took the matter under advisement, promising a written decision on the Government's request for enforcement of the subject summons.

Before addressing the merits of the parties' positions in this particular case, the Court will set forth, if only to establish the procedural and substantive basis for its decision, the well-established standards to be followed by the litigants and the courts in summons enforcement actions such as this.

**The Kis Paradigm And The Present Petition To Enforce The IRS Summons**

**I.**

In *United States v. Kis*, 658 F.2d 526 (7th Cir.1981), the Court of Appeals for the Seventh Circuit set forth the procedural and substantive requirements for proceedings pursuant to 26 U.S.C. § 7604. First, the Government must submit, along with its petition, evidence of a prima facie case that the conditions exist for the issuance of a summons. Ordinarily established by affidavits of the agents involved in the investigation, the prima facie case is made out by a showing that:

(1) the investigation will be conducted pursuant to a legitimate purpose;

(2) the inquiry may be relevant to the purpose;

(3) the information sought is not already within the Commissioner's possession; and

(4) the administrative steps required by the Code have been followed—in particular, that the "secretary or his delegate," after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

*United States v. Kis*, 658 F.2d 526, 536 (7th Cir.1981) (quoting *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964)). If the Government meets this burden, the district court should, within fifteen (15) days, issue to the respondent an order to show cause why the summons should not be enforced.

Thereafter, the taxpayer has thirty (30) days to file his or her response. At that time, the burden of production and proof shifts to the taxpayer, and the burden is a heavy one. *United States v. LaSalle National Bank*, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978). The taxpayer must do more than produce evidence that simply calls into question the Government's prima facie case; instead, he or she must demonstrate a lack of good faith—that is, that the Government has abandoned in the institutional sense its pursuit of possible civil penalties. *United States v. Moll*, 602 F.2d 134, 138 (7th Cir. 1979).

Observing that it is the court's process that is invoked to enforce the summons, the United States Supreme Court has stated unequivocally that

...a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

*United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Nonetheless, the burden of proving some improper use of the summons rests squarely on the taxpayer; the Supreme Court's opinion in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), may not have "closed the door in the taxpayer's face, but neither did it leave much more than a very slight opening." *United States v. Kis,* 658 F.2d 526, 539 (7th Cir.1981) (quoting approvingly the language in *United States v. Garden State National Bank,* 607 F.2d 61, 70 (3d Cir.1979)).

■■■ As a practical matter, the taxpayer is required to answer the Government's case through responsive pleadings, supported by affidavits, that allege specific facts in rebuttal. Those facts must permit at least an inference that some wrongful governmental conduct exists; mere allegations of bad faith will not suffice, nor will legal conclusions. If, at this stage, the taxpayer cannot refute the Government's four-part, prima facie case or cannot support factually a proper affirmative defense,

the district court is obliged to dispose of the matter on the papers before it and without an evidentiary hearing. *United States v. Kis,* 658 F.2d 526, 538 (7th Cir. 1981) (citing approvingly the standards set forth in *United States v. Garden State National Bank,* 607 F.2d 61, 71 (3d Cir. 1979)).

The Court of Appeals for the Seventh Circuit has summarized the taxpayer's burden this way:

Although ... we do not want to put the taxpayer in the anomalous position of having to allege specific facts when he has no means to gather that information through discovery, the basic discovery that the Third Circuit allowed in *Garden State* solves that dilemma. All the taxpayer needs to do is develop facts from which a court might *infer a possibility* of some wrongful conduct by the Government. He need not be able to prove that the wrongful conduct in fact exists. This inference could be drawn from any of the factors cited in *Garden State* or by any other evidence that the taxpayer might have, such as an offer to settle a collateral dispute. If the taxpayer cannot develop even the evidence necessary to meet this standard, then an evidentiary hearing would be a waste of judicial time and resources.

*United States v. Kis,* 658 F.2d 526, 540 (7th Cir.1981) (emphasis in original).[3]

---

**3.** The "basic discovery" that the district courts of this circuit permit, like those in the Third, is designed to assist the taxpayer in meeting his burden. Among the things the taxpayer is allowed to discover are

(1) the identities of the investigating agents;
(2) the date the investigation began;
(3) the dates the agent or agents filed reports recommending prosecution;
(4) the date the district chief of the Intelligence Division or Criminal Investigation Division reviewed the recommendation;
(5) the date the Office of Regional Counsel referred the matter for prosecution;
(6) the dates of all summons issued under 26 U.S.C. § 7602; and
(7) the nature of any contacts, relating to and during the investigation, between the investigating agents and officials of the Department of Justice.

At the same time, no discovery through depositions or interrogatories is necessary, "for any testimony that could be conducted then could be conducted just as easily in open court during the hearing [if one is granted]." *United States v. Kis,* 658 F.2d 526, 542 (7th Cir.1981). Similarly, limited discovery of documents believed to be in the possession of the IRS may be permitted but only upon "a positive showing that the particular documents are necessary to [the taxpayer's] defense and that they provide information that could not otherwise be obtained at the hearing." *United States v. Kis,* 658 F.2d 526, 542 n. 52 (7th Cir.1981).

Based on any relevant evidence he or she discovers, the taxpayer might then be able to posit some inference of possible wrongful conduct by the Government, premised on "any of the factors cited in *Garden State*," as follows:

If, on the other hand, the taxpayer presents enough specific facts to meet the established burden, he or she is entitled to an adversarial hearing. The hearing is to be held within sixty (60) days after the response is filed and should be conducted within the general guidelines established by the Court of Appeals in *United States v. Kis*, 658 F.2d 526, 540 (7th Cir.1981):

At the hearing, the Government can make its *prima facie* case through the introduction into evidence of the affidavits submitted with the petition for enforcement that began the proceedings. The Government could also present other evidence, testimonial or otherwise, to counter the specific allegations made by the taxpayer that were sufficient to warrant the holding of the hearing. The taxpayer would then be able to present his case, which would include the specific allegations made in his responsive pleading. The taxpayer would also be able to examine under oath the agents responsible for the investigation and any other witnesses he may call. While we do not wish to circumscribe the discretion of the district court in conducting the hearing, the court should not permit the hearing to become a pure fishing expedition by the taxpayer. The testimony he seeks should be related to some possible abuse of process as could be inferred from previously presented evidence. The court may within its discretion limit testimony if the questioning moves too far afield.

■ As before, the taxpayer bears an extraordinarily heavy burden at the hearing; he can succeed only by proving by a preponderance of the evidence some improper use of the summons by the IRS. Moreover, if at the time of the hearing, the IRS has made no recommendation for criminal prosecution to the Department of Justice and there is no reason to suspect that such a recommendation is being unduly delayed, the party opposing the summons must establish that the inquiry has no civil purpose whatsoever. *United States v. Moll*, 602 F.2d 134, 139 (7th Cir.1979). If the taxpayer cannot prove at the hearing that the IRS has abandoned any institutional pursuit of a civil tax determination, the district court is obliged to order enforcement of the summons at that time.[4]

## II.

■ Measuring the pleadings in the present case under the standards articulated above, the Court concludes that the respondents have not met their burden of proving that enforcement of the summons is sought in pursuit of some improper purpose by the Government or in furtherance of wrongful governmental conduct. Because it reaches this conclusion, the Court will order that the IRS summons be enforced.

At the outset, the Court reaffirms its view, implicit in its *Order to Show Cause* of July 26, 1983, that the Government has established a prima facie case for enforcement. First, it is plain that the United States and, in particular, IRS Special Agent Collins and former Agent Robertson, seek the testimony and designated documents of the respondents for the legitimate purpose of investigating their tax liability for the

(1) whether the IRS issued the summons after the investigating agents recommended prosecution;
(2) whether inordinate and unexplained delays in the investigation transpired; or
(3) whether the investigating agents were in contact with the Department of Justice.
*United States v. Kis*, 658 F.2d 526, 539 (7th Cir.1981) (quoting approvingly the touchstones set forth in *United States v. Garden State National Bank*, 607 F.2d 61, 71 (3d Cir.1979)).

**4.** The Court of Appeals has recognized, however, that there may be cases in which resolution of the issues remains unclear even after the hearing. In those instances, the taxpayer may be permitted some additional discovery beyond that laid out in *United States v. Garden State National Bank*, 607 F.2d 61, 71 (3d Cir.1979). This discovery, however, can be limited by the district court in the exercise of its discretion and must be completed within sixty (60) days after the initial evidentiary hearing. A final hearing at which the taxpayer still bears the burden of proving an improper purpose or abandonment of civil purpose by the Government, must then be held within thirty (30) days after the conclusion of discovery. *United States v. Kis*, 658 F.2d 526, 542 (7th Cir.1981).

calendar years 1977 through 1981, or, as former Agent Robertson testified, "[t]o clear up the matter as to whether or not there had been a violation of the tax laws." *Transcript of Proceedings* at 9 (November 1, 1983). Second, the inquiry the Government intends to pursue—principally by way of examination of the various journals, invoices, summaries, customer lists, balance sheets, and records of the corporate respondent and testimony of the individual respondent—is clearly relevant to determining the federal tax liabilities of these parties for the years in question.

Third, petitioner Collins states in his declaration of June 2, 1983, that with the exception of those records identified by former Agent Robertson in his own declaration of December 13, 1984, the testimony and materials sought by the summons are not in the possession of the Internal Revenue Service. Moreover, as to those documents provided to the IRS agents by Diane M. Langron, it was Agent Robertson's testimony that the summoned materials and testimony were needed "to substantiate the authenticity of records we had in our possession previously." *Transcript of Proceedings* at 9 (November 1, 1983); *see also Declaration* of Raymond H. Robertson at 2–3 (December 13, 1982). Finally, Agent Robertson confirms in his declaration that the IRS has taken all appropriate administrative steps for issuance of the summons, including a determination that further examination is necessary and that the respondent-taxpayers have been notified to that effect.

As indicated above, the respondents' efforts to rebut this prima facie case turn on the notion that the summons was issued in furtherance of wrongful governmental conduct and that enforcement would thus constitute an abuse of the Court's process. In particular, the respondents attempt to meet their burden by showing that Diane M. Langron, in copying and producing for the IRS Special Agents numerous business records of the corporate respondent, was acting, for practical purposes, as an agent of the Government, providing these documents to the IRS agents in violation of the respondents' rights under the Fourth Amendment to security against unreasonable searches and seizures. Accordingly, the present petition constitutes an unjustified effort on the Government's initiative to validate or secure judicial approval of the illegal seizure of the corporate business records, or so the respondents argue.

With this particular contention in mind, the Court has reviewed and carefully considered the testimony adduced during the two-day hearing in this matter, along with the several exhibits introduced by the parties during the course of those proceedings. As a threshold matter, the Court must reject the respondents' characterization of the nature of the relationship between Diane M. Langron and the IRS agents with whom she met during late 1981 and early 1982. Specifically, the Court finds that Ms. Langron's production of the respondents' corporate documents was not initiated or continued at the encouragement of the Government but was merely undertaken in an effort to protect herself from any civil or criminal liability that she may have incurred as a result of her involvement in the preparation of those documents she knew to be false.

The Court finds substantial support for this conclusion in the testimonial evidence adduced by the Government. For example, Ms. Langron testified early in the proceedings that it was her discomfort with respect to the corporate respondent's export and accounting practices, among other things, that compelled her to contact the IRS; indeed, she initiated the relationship when she "was to the point of, [she] felt I had nowhere else to go and [she] needed some questions answered." *Transcript of Proceedings* at 21 (November 1, 1983). She later testified that her initial inquiry focused on the extent, if any, to which she would be "liable in the event that there was another audit and these things were exposed at this time; and in lieu of the fact that [her] name was on the documents, [she] wanted to know if [she] could be liable to any extent." *Transcript of Proceedings* at 26 (November 1, 1983).

This testimony, when coupled with that of IRS Special Agents Robertson and Collins and even that of the respondents' own witness, Deborah L. Adney, indicates that Ms. Langron's principal, if not sole, motivation in providing the Government with the subject business records was to protect herself against possible liability. As Special Agent Collins testified:

> She was scared that she would be blamed for signing the documents that she knew were false, and she just became scared about that. She became scared because in October of 1981 she made a phone call to Internal Revenue Service asking in general terms, without giving names, whether she could be in trouble for signing documents that were, in fact, false; and whomever she talked to told her, yes, you could.

> And after that time in October she was scared that she was going to be blamed for what was going on.

*Transcript of Proceedings* at 94 (November 2, 1983).

It is equally clear to the Court that, once having undertaken to provide the IRS with the respondents' corporate documents, Ms. Langron was in no sense deputized by the IRS agents with whom she met to produce additional material from the respondents' files. Repeatedly throughout her testimony, Ms. Langron emphasized the wholly voluntary nature of her undertaking; the following exchange between the Assistant United States Attorney prosecuting this case and Ms. Langron is illustrative:

Q And you met with [IRS Special Agents] Collins and Miller on that first occasion; did the two men discuss with you whether or not they wanted you to get additional documents for them for additional photocopies of documents?

A No. As a matter of fact, one of the very first things that Mr. Collins had indicated when I turned over some evidence was that they cannot request of me to get anything, that that was not legal, and that anything that I turned over to them was totally voluntary.

Q And did you tell them that you intended to get additional documents?

A I told them at that point that I had access to much more, yes.

Q But did they tell you that they wanted you to get more documents?

A Never in any confrontation we had.

*Transcript of Proceedings* at 33 (November 1, 1983). The considerable testimony of Special Agent Collins supports Ms. Langron's account that she was never requested to produce corporate documents and records of the respondents. *See Transcript of Proceedings* at 65, 66, 68, 71, & 75 (November 2, 1983).

Although it appears that the IRS agents meeting with Ms. Langron did request that she prepare for their use an employee list and job description for those individuals working for the corporate respondent during Ms. Langron's tenure there, it is clear that this document was eventually prepared by Ms. Langron on her own initiative and was not a part of the respondents' corporate records. Likewise, the Court does not interpret as a request for documents the agents' expressions of so-called "disbelief" as to the nature and scope of the invoices provided them by Ms. Langron at their meeting of December 17, 1981. *See Transcript of Proceedings* at 44 & 67 (November 1 & 2, 1983). The upshot of all this is that while Ms. Langron plainly developed a business-type relationship with IRS Agents Robertson and Collins during the several months of her meetings with them, the role of the agents was consistently passive and never assumed that of an employer-supervisor directing an employee-agent to perform certain tasks.

Admittedly, the respondents have introduced some evidence to suggest that Ms. Langron was, in fact, "working" on behalf of the Government in the last days of her employment at the corporate respondent's place of business. Most damaging, perhaps, to the Government's case is a portion of Ms. Langron's testimony before the Job Service Division-Unemployment Compensa-

tion of the Wisconsin Department of Industry, Labor and Human Relations, on May 10, 1982. In support of her claim for unemployment benefits and in specific response to a question relating to the circumstances under which her employment with the corporate respondent terminated, Ms. Langron testified as follows:

Well, I was—for the Treasury Department, I was accumulating copies of all these things. The gentlemen from the Treasury Department were coming to my house on a regular basis, and we exchanged information. And they indicated that they could use such and such record. They never instructed me that I had to get them because that is not legal. They just indicated that they could use such and such records, at which point then I would get these records for them.

*Transcript of Proceedings* before the Job Service Division-Unemployment Compensation, Wisconsin Department of Industry, Labor and Human Relations, *In the Matter of the Benefit Claim of Diane M. Langron Involving the Account of Continental Plastic Corporation,* Hearing No. 82–01199 AJ at 17–18 (May 10, 1982). Earlier, in a letter written to the Job Service Division-Unemployment Compensation and introduced by the respondent as Exhibit 1–E, Ms. Langron explained:

I had been working with the Treasury Dept. out of Racine in supplying them with much detailed information, records regarding charges of embezellment [sic], tax fraud, tax evasion and customs fraud; against my supervisor, Elton K. Feffer, and his partner, Richard R. Alter. This "undercover" work led to much distress and many pressures.

The respondents direct the Court's attention to this evidence in support of their contention that Ms. Langron's taking and copying of the corporate respondent's records was conducted with the knowledge, participation, and approval of the Government, whose agents were actually directing the search and seizure of the subject corporate materials.

While this testimony and documentary evidence does, on its face, discredit somewhat Ms. Langron's contention that her involvement with the IRS was wholly voluntary and that her provision of documents was never in response to a specific request for production, the Court does not find that, viewed in the context in which it was offered, this evidence is sufficiently persuasive to warrant denial of the Government's petition. When queried by the Assistant United States Attorney about her testimony before the Job Service Division-Unemployment Compensation, Ms. Langron explained her use of the expression "working with the Treasury Department" as follows:

Well, to me working, I used as an effort that I put forth, not necessarily compensated by any financial reward or physical reward; I used it in the sense that right now my basic job is that I am a homemaker and I believe that was working, although I am not compensated for that, it was just an effort that I put forth.

*Transcript of Proceedings* at 41 (November 1, 1983). On cross-examination, Ms. Langron similarly explained her invocation of the term "undercover" in her letter of April 16, 1982, as follows:

Well, unfortunately I am not a person that can express myself in words. I do it much better verbally and unfortunately, this paper had to be filed on paper for request for a hearing.

And for a lack of availability to really express myself, I used the word "undercover." . . .

It meant that I was giving some information of supplying some information without the knowledge that [respondent Elton K. Feffer] was not aware that I was doing this. This is why I, as I say I put the word in quotation marks for lack of a better word to use.

*Transcript of Proceedings* at 51 (November 1, 1983).

Although such after-the-fact explanations of previously unfavorable testimony might well be expected, the Court views

Ms. Langron's explanations as credible and accepts her admissions to less-than-precise uses of langauge in describing the nature of her relationship with Special Agents Robertson and Collins. Particularly when interpreted in the context of those carefully-described goings-on in late 1981 and early 1982, the Court would be hard-pressed to accept at face value the summary description of her involvement with the Government as provided by Ms. Langron to the Wisconsin Department of Industry, Labor and Human Relations.

Having thus concluded that Ms. Langron's taking and copying of various records of the corporate respondent was not governmental conduct for purposes of the Fourth Amendment protection, the Court will address only summarily the issue of the respondents' reasonable expectation of privacy in the subject materials. Significantly, the evidence as to this issue stands overwhelmingly in the Government's favor.

It is apparent from Ms. Langron's substantially unchallenged testimony that she had considerable access to the files, cabinets, and desks in which the various records she copied were maintained. Among other things, Ms. Langron stated that she had "open access" to respondent Feffer's office; that she routinely placed checks and invoices in this respondent's desk; that she frequently reorganized and cleaned the drawers in that desk; and that she had virtually unlimited access to the various files of the corporate respondent. (*See Transcript of Proceedings* at 14–16, 18–21 (November 1, 1983). As Ms. Langron testified in reference to another, albeit not entirely unrelated, matter, "I was the girl with the most seniority there, so everyone recognized me and depended on me for various things; that's why even though at that point I wasn't making the actual deposits, everyone had still come in, would bring checks to me, et cetera, and I was Continental Plastics in their eyes." *Transcript of Proceedings* at 29 (November 1, 1983). Indeed, the testimony of the respondents' own witness, Deborah L. Adney, wholly supports Ms. Langron's description of her considerable access to and familiarity with virtually all of the records and journals of the corporate respondent and a considerable number of the personal documents of the individual respondent. *See Transcript of Proceedings* at 116–119 (November 2, 1984).

Under these circumstances, the Court finds that the respondents had no reasonable expectation of privacy as to Ms. Langron and her work with many of those documents sought pursuant to the IRS summons which the Government seeks to enforce. Accordingly, for this and the other reasons articulated above, the Court must reject the respondents' principal contention that the summons was issued for the improper purpose of furthering some wrongful conduct, in disregard of their right to be secure against unreasonable searches and seizures, as established under the Fourth Amendment to the United States Constitution.[5]

### CONCLUSION

For the reasons set forth herein, the Court hereby GRANTS the petition of the United States of America and Thomas R. Collins for enforcement of the subject IRS summons and ORDERS the respondents to appear before the Internal Revenue Service at a time and place to be determined by the

---

**5.** In support of his clients' position, respondents' counsel also argued in closing argument, as in his affidavit appended to the *Answer to Petition,* that the holdings in *Knoll Associates, Inc. v. Federal Trade Commission,* 397 F.2d 530 (7th Cir.1968); *United States v. Stein,* 322 F.Supp. 346 (N.D.Ill.1971); and *Gould v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), among other cases, compel denial of the Government's petition for enforcement in this action.

The Court has carefully reviewed the authority cited and articulately argued by counsel in support of his clients' position. Although it will resist the temptation to identify with particularity those aspects of the cases that make them factually distinguishable from this matter, the Court will state plainly that nothing in those decisions convinces it that any ruling other than the one reached herein would be warranted by the circumstances of the present case.

United States Internal Revenue Service and then and there give testimony and produce those materials as required by the summons.